ESTATE of Oscar A. NORDQUIST, Deceased, Georgiana G. Nordquist, Executrix, and Georgiana G. Nordquist, Appellants,

·v.·

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 73–1033.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1973.

Decided July 20, 1973.

Stephen G. Nordquist, New York City, filed appendix, appellants' brief and appellants' reply brief.

Fred B. Ugast, Acting Atty. Gen., Tax Div., Dept. of Justice, Meyer Rothwacks, Grant W. Wiprud and Mary J. McGinn, Attys., Tax Div., Dept. of Justice, Washington, D. C., filed brief for appellee.

Before CLARK, Associate Justice, Retired,* and HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

The taxpayer, Georgiana G. Nordquist,[1] appeals from an adverse decision of the Tax Court.[2] The sole issue is whether the gain realized by the taxpayer was a long-term capital gain or ordinary income.

The case was submitted to the Tax Court upon stipulated facts which are summarized below:

On February 12, 1964, Nordquist entered into a written agreement[3] with

---

* United States Supreme Court, sitting by designation.

1. Reference to "taxpayer" is to Georgiana G. Nordquist, individually. The estate of her husband, Oscar A. Nordquist, is a party to this litigation solely because the decedent filed a joint income tax return with his wife for the taxable year 1965.

2. The decision of the Tax Court, T.C. Memo 1972–198, is unofficially reported at ¶ 72,198 P–H Memo TC.

3. The agreement provided as follows:
"WHEREAS, Oran D. Powell (hereinafter called Powell) has an opportunity to acquire a 50% ownership of a Ford Motor Co. dealership to be known as Brookdale Ford in Minneapolis, Minnesota, and
"WHEREAS, Georgiana Nordquist (herinafter called Nordquist) desires to invest the sum of $12,000.00 with Powell, the said money to be used by Powell in acquiring the said 50% interest,
"NOW, THEREFORE, It is agreed by and between the parties as follows:
"1. That upon the formation of the corporation which will operate the dealership, Nordquist will pay to Powell the sum of $12,000.00.
"2. Powell will use the said $12,000.00, together with other moneys of his own, to acquire a 50% ownership of the said corporation, and will obtain the issuance to himself of one-half of the issued and outstanding stock of the corporation.

Oran D. Powell under which she was to advance $12,000 to Powell to enable him to acquire fifty percent of the stock of Brookdale Motors, Inc., a corporation to be organized to operate a Ford dealership. The $12,000 was to be advanced at the time the corporation was organized and, as security for the advance, Powell was to pledge and deliver to Nordquist all of his stock in the corporation, together with a mortgage on his home in the amount of $12,000.

Powell could terminate the agreement and fully satisfy his obligation to Nordquist in any of three alternative manners:

(1). Pay her $24,000 at anytime within fifteen months from the effective date of the lease of the building in which the corporation would conduct its business;

(2) Pay her $26,000 after that time, but within twenty-six months from the date of the lease; or

(3) If Powell did not terminate the agreement within twenty-six months from the date of the lease by paying her cash as above described, he would then be required to transfer to her twelve percent of his stock in the corporation, or, if unable to do so, pay twelve percent of the net profits of the corporation, commencing with the third year of the corporate operations, until able to transfer the stock.

When Powell had fully performed his obligations under the agreement, Nordquist was to return the pledged stock and relinquish the mortgage as fully satisfied.

"3. To secure the safety of Nordquist's investment, Powell will:
"a. Pledge and deliver all of his stock to Nordquist to be held in accordance with the provisions hereinafter set out.
"b. Give a mortgage on his home in the amount of $12,000.00 to Nordquist.
"4. Powell shall have the option of terminating this Agreement at any time within 26 months from the effective date of the lease covering the dealership building as follows:
"a. By paying to Nordquist the sum of $24,000.00 on or before 15 months after the effective date of said lease.
"b. By paying to Nordquist the sum of $26,000.00 after 15 months have transpired from the effective date of said lease, but before 26 months from the effective date of said lease have transpired.
"5. In the event Powell exercises the option set out in paragraph 4, Nordquist will forthwith return the pledged stock and will satisfy the mortgage on Powell's home.
"6. In the event Powell does not exercise the option described in paragraph 4 hereof, Powell shall forthwith transfer to and deliver to Nordquist 12% of the then outstanding stock of the corporation, fully paid and unencumbered. If for any reason, Powell is unable to so transfer and deliver said stock as above set out, he shall in lieu thereof pay to Nordquist an annual sum equivalent to 12% of the net profits of the corporation as determined by its federal income tax return, commencing with the third year of corporate operations. Provided that at any time that Powell becomes able to transfer and deliver to Nordquist 12% of the then outstanding stock of the corporation he shall do so.
"7. It is understood that Powell will be a 50% owner of the said corporation and as such will have power to prevent the payment of excessive salaries or bonuses, and to prevent the accumulation of unusual reserves of capital, and Powell hereby agrees to so vote his stock so as to prevent such described corporate actions.
"8. Any losses sustained by the corporation operating the dealership shall be the loss of the corporation or Powell as the case may be.
"9. It is understood and agreed that when Powell fully performs his part of this Agreement, the pledged stock shall forthwith be delivered to him, and the mortgage upon his house shall be fully satisfied.
"10. If default occurs on Powell's part, Nordquist shall have the usual legal recourse on the stock and the mortgage.
"11. If for any reason Powell does not finalize his arrangement to acquire the 50% interest in the Brookdale Ford dealership within 90 days from date of this instrument, Powell will forthwith return said $12,000.00 to Nordquist, together with one year's interest computed at the rate of six (6%) per cent per annum."

**1061**

Brookdale Motors, Inc., was organized on March 25, 1964, and Nordquist paid Powell $12,000 as required by the agreement. However, Powell never pledged and delivered his stock in the corporation to Nordquist, or furnished her with a mortgage on his home as security for the advance. The effective date of the lease covering the corporation's premises was October 1, 1964. In November, 1965, within the fifteen-month period prescribed in the agreement, Powell paid Nordquist $12,000 in cash and gave her a first mortgage note for $12,000, having a then fair market value of $11,400. Nordquist accepted this as fully satisfying Powell's obligations and the agreement was terminated.

On their 1965 tax return, Nordquist and her husband reported the $11,400 gain from the transaction as a long-term capital gain. The Commissioner determined that the gain was ordinary income and issued a deficiency notice. The Tax Court upheld the Commissioner's determination and Nordquist has taken this appeal.

The Tax Court was of the view that characterization of the transaction as a loan, or whatever, was irrelevant. It stated that Nordquist at no time acquired an interest in the stock, and held that Nordquist had contracted for and received ordinary income.

 We agree with the result reached by the Tax Court. In light of the preferential tax treatment given long-term capital gains, the Supreme Court has repeatedly indicated that the definitions of captial asset and capital gain should be construed narrowly. See, e. g., Commissioner v. Brown, 380 U.S. 563, 570, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965). A sale or exchange is essential for a transaction to qualify as a long-term capital gain, Breen v. C.I.R., 328 F.2d 58, 64 (8th Cir.), cert. denied, 379 U.S. 823, 85 S.Ct. 48, 13 L.Ed.2d 34

(1964); and whether or not a sale or exchange has taken place for income tax purposes must be ascertained from all relevant facts and circumstances. See, e. g., Sarkes Tarzian, Inc. v. United States, 240 F.2d 467, 470 (7th Cir. 1957). Moreover, the form of an agreement is not of itself determinative of the question of whether payments to the taxpayer should be treated as ordinary income or capital gains. Rather, there is a need to look to the substance of a transaction, going beyond its formal phraseology and its legal characterization under local law. Freund v. United States, 367 F.2d 776, 778 (7th Cir. 1966).

 We have examined the transaction with the above principles in mind and are convinced that the transaction, considered in its entirety, was a loan followed by repayment and not a purchase followed by resale. Thus, the gain realized was interest taxable as ordinary income under Int.Rev.Code of 1954, § 61(a)(4). Powell, in essence, borrowed $12,000 from Nordquist. Nordquist gave Powell the option of satisfying the loan by making payment in either cash or twelve percent of the stock in the corporation. We are satisfied that this constituted a sufficiently unconditional and fixed obligation to repay, and that the cases cited for the contrary position by Nordquist are distinguishable. That the securities might have been without value at the time of satisfaction was a part of the risk taken by the lender. Although Nordquist may have created a greater risk of loss and have been improvident by casting the transaction in this manner, it does not affect the basic nature of the transaction. All loans involve a certain amount of risk; and where the possibility of return is great, as it was here, the risk assumed is concurrently great.

Affirmed.