REX RAYMOND FOX AND DOROTHY M. FOX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fox v. Commissioner
Docket No. 1262-77.
United States Tax Court
T.C. Memo 1980-198; 1980 Tax Ct. Memo LEXIS 386; 40 T.C.M. (CCH) 444; T.C.M. (RIA) 80198; June 11, 1980, Filed Rex Raymond Fox, pro se. John C. McDougal, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: For their taxable years ended December 31, 1972 and 1973, respondent has determined deficiencies in petitioners' Federal income tax in the respective amounts of $308.21 and $3,858.24. The only issue to be decided is whether monies *387 received by petitioners with respect to certain transactions in 1973 and 1974 are to be treated as income from the sale or exchange of capital assets pursuant to sections 1221 [1] and 1222. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided in Virginia Beach, Virginia, at the time the petition herein was filed. They filed their joint Federal income tax returns for the years in issue with the Internal Revenue Service Center at Memphis, Tennessee. Dorothy M. Fox is a party herein only because of the joint returns and, consequently, Rex R. Fox will hereinafter be referred to as petitioner. At some time prior to May 1972, petitioner was approached by Frank E. Mower, II (Mower), who solicited petitioner for his financial participation in "wine investments." Mower proposed that petitioner invest a sum of money with a company known as Portugal Wines, Ltd. (PW, or *388 sometimes referred to as Portugal Wines, Ltd.). In exchange for his cash, petitioner received a "wine contract" from PW, which is reproduced in full below: PORTUGAL WINES, LTD. This is to certify that Rex Fox has entered into an investment contract with Portugal Wines Ltd. in the amount of $8,000.00. This contract to mature on or about January 12, 1973. J. O. Friedman /S/ J. O. Friedman
J. M. Holt, Jr. /S/J. M. Holt, Jr. Mower informed petitioner that PW would use his cash investment to purchase Portguese wine and that, on the stated maturity date, the wine would be sold and petitioner's investment returned with an additional sum of as much as 50 percent of his original investment, depending upon the sales price obtained. Throughout 1973 petitioner made additional cash investments and during 1973 and 1974 received returns as follows: Percentage
Investment
Maturity
Cash
Cash
Return on
Date
Date
Investment
Return & Date
Investment
5/72
1/12/73
$ 8,000
$12,000; 2/73
50
1/73
10/73
8,000
11,200; 10/73
40
2/73
11/73
15,000
20,000; 11/73
33
4/73
1/74
8,000
11,000; 1/74
37.50
On his Federal *389 income tax returns for 1973 and 1974, petitioner reported the respective amounts of $12,200 and $3,000 as capital gains. In his statutory notice of deficiency respondent determined that the "wine transactions" reported during 1973 and 1974 did not result in the acquisition, sale or exchange of capital assets. He, therefore, decreased petitioner's reported capital gains and treated the gains realized from the transactions as oridinary income. OPINION Respondent contends that petitioner is not entitled to capital gains treatment on the income realized from the investment transactions hereunder because the "wine contracts" are not capital assets and because no sale or exchange occurred with respect to such contracts. To the contrary, petitioner argues that the "wine contracts" were capital assets and that there were valid sales or exchanges. Petitioner must carry the burden of showing error in the Commissioner's determination. Rule 142(a), Tax Court Rules of Practice and Procedure.Lewis v. Reynolds, 284 U.S. 281, 283 (1932). In other words, in order to have his benefit adjudged to be capital gain petitioner has the burden of proving (1) that the property in *390 question was a capital asset, and (2) that there has been a sale or exchange of that property. Assets are generally defined as property of any kind which can be made available for the payment of debts. Capital assets are defined by section 1221 and the statutory definition is a negative one, providing generally that the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business) but does not include stock in trade, property includable in inventory, or for sale to customers, or subject to the allowance for depreciation, etc. The sale of a capital asset, if held for a designated period of time, is given the preferential tax treatment of a long-term capital gain and for this reason the Supreme Court has repeatedly held that the definition of a capital asset must be construed narrowly. See, e.g., Commissioner v. Brown, 380 U.S. 563, 570 (1965). In the instant case petitioner paid his money and received a piece of paper which he calls a "wine contract" and argues that it is indistinguishable from a commodity futures contract. Examination of the piece of paper which is reproduced in full in our findings shows only *391 a recitation that petitioner had entered into an investment contract with Portugal Wines, Ltd. in the amount of (blank on form), the contract to "mature" on or about (blank on form). No quantity of any commodity or any property, tangible or intangible, is specified; nor is any named commodity or property specified; nor does the paper indicate that petitioner is acquiring any interest in any property or in Portugal Wines, Ltd. In short, there is no way to determine from this record what rights, if any, petitioner had either in PW or in any proceeds that petitioner had been led to believe would result from his investment. If we had to characterize these transactions, which we do not, we would probably call them loans followed by repayments, thus making the gains taxable as ordinary income under section 61(a)(4). Estate of Nordquist v. Commissioner, 481 F. 2d 1058 (8th Cir. 1973), affg. a Memorandum Opinion of this Court. In Harris v. United States, 431 F. Supp. 1173 (E.D. Va., 1977), the court remarked, on surprisingly similar facts, that the investor had obtained an interest in nothing but a puff of smoke. That such interest could not be made *392 available for the payment of debts, and therefore such interest could not be defined as an asset, capital or otherwise. In support of his argument that these wine contracts were in fact commodity futures contracts petitioner has had introduced into evidence confirmation slips covering a buy and a sale of live cattle. Petitioner argues that no fixed amount of live cattle is designated since the slips recite only "one contract." However, the expert, called by petitioner as his only witness, testified that the amount represented by "one contract" was specified by the commodity futures trading corporation as representing 40,000 pounds of live cattle. Hence, petitioner's comparison fails utterly. The slips in evidence represent a named commodity and, by understood reference, represent an exact amount of that commodity. Petitioner did not testify. The testimony of his only witness was largely conclusionary and partly contradictory. This has created a weak record on which we must conclude and hold that petitioner has not carried his burden of proving that the agreement he entered into with Portugal Wines, Ltd., were capital assets in his hands. Having decided that petitioner did *393 not hold capital assets, it is unnecessary for us to consider whether petitioner's receipts from Portugal Wines, Ltd., or Mower represented sales or exchanges. Decision will be entered for the respondent. Footnotes
1. Unless otherwise specified, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. The year 1974 is involved because of the carryback net operating loss provisions of sec. 172.↩