**Nannie V. COMPTON, Appellant,**

v.

**UNITED STATES of America, et al.,
Appellees.**

**No. 9116.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 13, 1963.

Decided June 17, 1964.

Dougal Rice, Asst. U. S. Atty., on brief), for appellees.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and BARKSDALE, District Judge.

BOREMAN, Circuit Judge.

Plaintiff, Nannie V. Compton, brought this action seeking a refund of $194.19 alleged to have been illegally assessed and collected as federal taxes. She joined with her claim for refund prayers for certain injunctive relief and for abatement of the balance of a $75,167.39 assessment for taxes and penalties alleged to have been unlawfully made. From the judgment of the District Court dismissing the action on the merits she appeals.

The relevant facts are not in controversy. On October 21, 1957, members of the Arlington County Police Department, armed with a search warrant, entered and searched the premises of the plaintiff in Arlington, Virginia.[1] Indicia of gambling or wagering operations, including adding machines, tapes, numbers slips and a large amount of cash, were seized. Plaintiff and one Joseph A. Chase were arrested and charged with violating Virginia's lottery laws. On November 7, 1957, plaintiff and Chase entered separate pleas of guilty in the County Court of Arlington County, Virginia, to charges of operating a lottery and possessing lottery slips. Plaintiff was given a suspended sentence of nine months and placed on probation for a period of five years. Subsequently, Chase was prosecuted on charges of failure to file federal gambling excise tax returns and failure to purchase a wagering tax stamp as required by law. He was convicted in the District Court but, on appeal on Government's motion, the judgment of conviction was reversed and the cause remanded, the Government conceding before this court that the warrant under which plaintiff's home was

Otto L. Tucker, Alexandria, Va., for appellant.

George F. Lynch, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, Claude V. Spratley, Jr., U. S. Atty., and Mac-

1. Premises at 1800 South Cleveland Street, Arlington, Virginia, were titled in the name of the plaintiff but the District Court found that Joseph A. Chase had contracted for the erection of the house. Plaintiff made her home on the premises and Chase maintained a room there in which he kept clothing and other belongings. In addition, Chase had access to other parts of the house and kept a safe in the den.

searched and the property seized was invalid, and that the evidence upon which Chase had been convicted was obtained in violation of the constitutional protection against unreasonable search and seizure.[2] That prosecution was subsequently dismissed in the District Court on Government's motion.

Prior to the criminal proceedings mentioned above, agents of the Internal Revenue Department, having learned from newspapers of the raid, were permitted by the police to inspect the seized property. From information gained through their inspection and from helpful and revealing discussions with the Arlington police, the agents estimated the gross receipts of the lottery business. On the basis of these estimates the District Director, pursuant to 26 U.S.C.A. § 6862, made a joint jeopardy assessment of excise and occupational taxes owed by plaintiff and Chase which, together with penalties and interest, totaled $75,167.-39.[3] The assessment, covering periods in 1957, is set forth below.[4] In an effort to collect the assessment, the District Director filed liens against property of the plaintiff, including her automobile and her home, and levied upon a bank account in plaintiff's name. The

balance in the bank account, $194.19, was paid by the bank to the District Director and credited to the total joint assessments against plaintiff and Chase.

In her complaint plaintiff alleged that at no time had she engaged in the State of Virginia in any of the activities that would require her to file a return of wagering taxes or to "apply for an occupational stamp to accept wagers." The denial of these allegations in the Government's answer created a material issue of fact. Before the District Court, plaintiff testified that she had never been engaged in the business of accepting wagers or operating a lottery and contended that, in any event, the assessment, being based upon illegally seized evidence, was void. The District Court held that she had not sustained the burden of showing that she was entitled to the relief requested and dismissed her action on the merits. We think the decision of the District Court should be affirmed.

■ On this appeal plaintiff fails, in her brief, to discuss or argue the refusal of the District Court to grant the injunctive relief requested and to abate the outstanding assessment. We are convinced, however, that in the circumstances here

2. The warrant under which the premises were searched stated as the material facts constituting probable cause—"Personal observation of premises and information from sources thought by the Police Department to be reliable." The Government, in the criminal proceeding against Chase, originally took the position that although the warrant failed to show probable cause, the evidence was nevertheless admissible because it had been seized by state officers. After the decision of Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), the Government altered its position and moved for dismissal. Subsequently, the Supreme Court of Appeals of Virginia in a forfeiture proceeding, Tri-Pharmacy, Incorpo-

rated v. United States, 203 Va. 723, 127 S.E.2d 89 (1962), held that the search warrant was valid and the search and seizure were proper. However, the District Court in the present action found that the property was illegally seized by the Arlington County Police Department and the Government does not contest that determination here.

3. The excise tax on wagers is imposed by Int.Rev.Code of 1954 § 4401, 26 U.S.C.A. § 4401 (1958). An occupational tax of $50 per year is imposed by Int.Rev.Code of 1954 § 4411, 26 U.S.C.A. § 4411 (1958), on any person who is liable for the tax under section 4401.

4.

|  | Tax | Penalty | Interest | Total |
|---|---|---|---|---|
| March 1957 | $14,476.64 | $ 7,238.32 | $154.18 | $21,869.14 |
| May 1957 | 14,476.64 | 7,238.32 | 81.79 | 21,796.75 |
| Sept. 1957 | 14,476.64 | 7,238.32 | 9.41 | 21,724.37 |
| Dec. 1957 | 9,651.10 |  |  | 9,651.10 |
| Occupational tax 1957 | 50.00 | 75.00 | 1.03 | 126.03 |
|  | $53,131.02 | $21,789.96 | $246.41 | $75,167.39 |

the court was without jurisdiction to grant such relief.[5]

■ The specific errors of which plaintiff does complain on this appeal are not altogether clear from her brief and oral argument. In her brief she states the questions involved as follows:

"1. Whether the record of the proceeding below shows the Appellant to have been engaged in a partnership or other arrangement to justify the assessment of Federal Excise Taxes to Appellant jointly with another so as to bring it in the ambit of the Due Process Clause of the Fifth Amendment to the Constitution of the United States?

"2. Whether the District Court committed reversible error in not permitting Appellant to retain counsel of her own choice?

"3. Whether evidence seized by either State or Federal officers, in violation of the Constitution of the United States, is inadmissible in Federal tax proceedings?"

We shall consider these questions as they relate to the suit for refund which, in our view, was properly before the District Court.[6]

We turn first to plaintiff's contention that illegally seized evidence is inadmissible in federal tax proceedings. Plaintiff makes this argument as an abstract proposition of law without in any manner demonstrating that unlawfully obtained evidence was introduced in the District Court. In fact, no physical or tangible evidence obtained as a result of the illegal search was introduced by the Government. The only evidence introduced by the Government which could possibly be deemed a product of the unlawful search was offered for the purpose of impeachment only and, for reasons hereinafter stated, we think the evidence was properly admitted for that purpose. Obviously the thrust of plaintiff's argument here, as in the court below, is that the assessment itself is invalid because it was based on illegally obtained evidence. Apparently she seeks to press that issue by broadly insisting that illegally obtained evidence is inadmissible in a civil proceeding. At trial, plaintiff introduced the testimony of three agents of the Internal Revenue Department to show the manner in which the assessment was made. From their testimony, it is clear that the assessment was based almost entirely upon the fruits of the illegal search[7] but that fact is not

---

5. With certain exceptions not relevant here, 26 U.S.C.A. § 7421(a) provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." As construed in Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), this statute clearly prohibits the granting of injunctive relief in a case such as this. The prayer for abatement was in the nature of a request for an injunction or a declaratory judgment, see Etheridge v. United States, 112 U.S.App. D.C. 151, 300 F.2d 906 (1962), and likewise could not have been granted. 28 U.S.C.A. § 2201 expressly excepts cases involving federal taxes from the grant of jurisdiction for declaratory judgments.

6. Although generally payment of the total assessment is a prerequisite to suing for a refund, the Supreme Court in Flora v. United States, 362 U.S. 145, 171 n. 37, 175 n. 38, 80 S.Ct. 630, 644, 646, 4 L.Ed. 2d 623 (1960), indicated that the full payment rule has no application to suits for refund of *excise* taxes, which may be divisible into a tax on each transaction or event and with respect to which the Tax Court has no jurisdiction. Lower federal court cases decided subsequent to the Flora decision have uniformly held that payment of the complete assessment is not a prerequisite to the maintenance in a District Court of a suit for refund. Tysdale v. United States, 191 F.Supp. 442 (D.Minn.1961); O'Neil v. United States, 60–1 CCH U.S. Tax Cas. 76,568 (E.D. N.Y. April 15, 1960); see Steele v. United States, 280 F.2d 89 (8 Cir. 1960); Sherwood v. Scanlon, 207 F.Supp. 686 (E.D. N.Y.1962) (dicta); Lassoff v. Gray, 207 F.Supp. 843 (W.D.Ky.1962) (dicta). See also Jones v. Fox, 162 F.Supp. 449 (D.Md. 1957) (supplemental opinion filed 1958), decided before the Flora case.

7. For example, Agent Hudner testified as follows:

"Q. The gross receipts, which you calculated, were based on the evidence held by the Arlington Police Department?

decisive of the issues here. The difficulty with plaintiff's position is that she apparently misconceives the burden of proof imposed upon her and which she must sustain in order to establish her claim of entitlement to a refund.

It is a well established principle that in every case, whether in a proceeding in the Tax Court to contest a deficiency assessment or in a District Court in a suit for refund, the assessment of the Commissioner is presumed to be correct.[8] To be sure, this presumption is not evidence in itself and may be rebutted by competent evidence. It operates merely to place upon the opposing party the burden of going forward with the evidence. However, to prevail in an action for refund, the taxpayer must not only overcome this presumption but must assume and discharge the added burden of demonstrating the correct amount of the tax due or that he owes no tax at all. See Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Commissioner of Int. Rev. v. R. J. Reynolds Tobacco Co., 260 F.2d 9, 14 (4 Cir. 1958); Clinton Cotton Mills v. Commissioner of Internal Revenue, 78 F.2d 292 (4 Cir. 1935); 9 Mertens, Federal Income Taxation, § 50.65 (Zimmet Rev. 1958).

An action for refund of taxes paid is in the nature of an action of assumpsit for money had and received and the plaintiff's right to recover must be measured by equitable standards.[9] Here, taxpayer's entire liability is at issue and if, under any state of facts, the Government is entitled to the money claimed, she cannot prevail. Consequently, it is not enough merely to show that the assessment was invalid or that the Commissioner erred; the plaintiff must go further and produce evidence from which another and proper determination can be made.[10] The extent of the taxpayer's burden in a refund action was aptly stated by Judge Learned Hand in Taylor v. Commissioner, 70 F.2d 619, 620 (2 Cir. 1934), aff'd sub. nom. 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935):

> " * * * If the burden of proof goes so far as to demand not only that the taxpayer show that the deficiency assessed against him is wrong, but what is the proper deficiency, or that there should be none at all, the decision was right, even though we know that the tax is too high. In an action to recover taxes unlawfully collected the burden does go so far. * * * But the reason for this is obvious; a plaintiff, seeking an affirmative judgment measured in dollars, must prove how much is due. His claim is for money paid and he must show that every dollar he recovers is unjustly withheld. So it is not enough merely to prove that the tax as a whole was unlawful; some of the dollars he paid may nevertheless have been due. * * * *"

To put it another way, the ultimate question in a suit for refund is not whether the Government was wrong, but whether the plaintiff can establish that taxes were in fact overpaid. The plaintiff, to prevail, must establish the exact amount which she is entitled to recover.

"A. Yes, sir.
"Q. Were there any other evidence used by you?
"A. No, sir."

8. See e. g., Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Veino v. Fahs, 257 F.2d 364 (5 Cir. 1958). See generally 9 Mertens, Federal Income Taxation § 50.71 (Zimmet Rev.1958).

9. E. g., Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937); Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932); United States v. Pfister, 205 F.2d 538 (8 Cir. 1953); Western Maryland Ry. Co. v. United States, 131 F.Supp. 873 (D.Md.1955), aff'd per curiam, 227 F.2d 576 (4 Cir. 1955), cert. denied, 351 U.S. 907, 76 S.Ct. 696, 100 L.Ed. 1443 (1956).

10. Helvering v. Taylor, supra note 8; United States v. Pfister, supra note 9; United States v. Harris, 216 F.2d 690 (5 Cir. 1954); 10 Mertens op. cit. supra note 8, § 58A. 35. But cf. United States v. Hover, 268 F.2d 657 (9 Cir. 1959).

With the foregoing principles in mind, we turn our attention to the circumstances of the case at hand. Here, plaintiff endeavored to prove that no tax was due by testifying that she had not engaged in the numbers business during the period in question, or at any time. In response to a question by the Government on cross-examination as to whether she had pleaded guilty to charges of maintaining a lottery, she testified: "I did not plead guilty. My attorney pleaded me guilty." The Government then sought to impeach her testimony by introducing in evidence a certified copy of the record of the County Court of Arlington County showing that plaintiff had pleaded guilty to charges of operating a lottery and possessing lottery slips. Also for the sole purpose of impeachment, the Government directed questions to the plaintiff concerning her knowledge of the property taken from her home; plaintiff denied any knowledge thereof. The District Court refused to credit plaintiff's testimony and held that she had not sustained her burden of proof. Without directly contesting this determination, plaintiff simply argues abstractly, as we have shown before, that unconstitutionally seized evidence is inadmissible in a federal tax proceeding. The Supreme Court has never directly passed upon this question [11] and we do not think it necessary for this court to do so here. We reiterate that no physical evidence obtained as a result of the illegal search was introduced at trial. The questions propounded by the Government with respect to plaintiff's knowledge of the property seized, as well as the record of the guilty plea in the Arlington County Court,[12] were directed only at impeaching plaintiff's testimony.[13] Without reaching the broader question, we hold that for such purpose this evidence was admissi-

11. The Supreme Court has not squarely decided whether illegally obtained evidence may be admitted in a civil proceeding. However, in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920), a criminal action, Justice Holmes, speaking for the Court, stated: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." Id. at 392. Several lower federal court cases have interpreted this language as prohibiting the use of illegally obtained evidence in civil as well as criminal cases. See, e. g., United States v. Physic, 175 F.2d 338 (2 Cir. 1949); Rogers v. United States, 97 F.2d 691 (1 Cir. 1938); Lassoff v. Gray, 207 F.Supp. 843 (W.D.Ky. 1962); Tovar v. Jarecki, 83 F.Supp. 47 (N.D.Ill.1948), rev'd on other grounds, 173 F.2d 449 (7 Cir. 1949). In addition, other cases have applied the prohibition against the use of illegally obtained evidence in forfeiture proceedings which, although essentially civil in nature, have some attributes of a criminal action. See, e. g., United States v. One 1963 Cadillac Hardtop, 220 F.Supp. 841 (E.D.Wis. 1963); United States v. $4,171.00 In United States Currency, 200 F.Supp. 28 (N.D.Ill.1961). On the other hand, other federal courts have indicated that the exclusionary rule has no application in civil cases. See Martin v. United States, 277 F.2d 785 (5 Cir. 1960); United States v. One 1956 Ford Tudor Sedan, 253 F.2d 725 (4 Cir. 1958); United States v. One 1953 Oldsmobile Sedan, 132 F.Supp. 14 (W.D.Ark.1955). In United States v. One 1956 Ford Tudor Sedan, supra, 253 F.2d at 727, Judge Haynsworth, speaking for this court, stated:

"We deem it unnecessary to extend, beyond the suppression of evidence in the criminal jurisdiction, the overlordship of the conduct of federal law enforcement officers."

12. The plaintiff contended below that the guilty plea entered in the Arlington County Court as well as the questions propounded by Government counsel were fruits of the illegal search which should have been stricken from the record. In our view of the case, it is not necessary to decide whether such evidence was the product of the illegal search and we may assume for purposes of decision that it was.

13. At page 185 of the transcript the following colloquy appears:

"THE COURT: * * * I understand Government Exhibit No. 2 which is the record of the plea of guilty in Arlington County was not introduced for the purpose of proving that in fact she was guilty or that there was anything to do with it. It was only produced in response to her answer that the plea she made was not a

ble. In Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), the Supreme Court held that evidence of a previous narcotics violation which had been illegally obtained could be used to impeach the defendant's testimony in a prosecution for subsequent illicit transactions in narcotics. There the Court stated:

> "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment." Id. at 65 of 347 U.S., at 356 of 74 S.Ct.

This pronouncement by the Supreme Court in a criminal case is *a fortiori* applicable in the instant case. Here the Government did not use the evidence affirmatively to establish a case. The Government was the defendant and it was merely resisting plaintiff's claim. By alleging in her complaint that she was not engaged in accepting wagers, she recognized that this question would materially affect her right to a refund of taxes paid. Her allegations were denied. The burden was on the plaintiff to prove that she was not engaged in accepting wagers during the period in question and the above evidence, offered only to impeach her testimony, was proper. Also, in view of our conclusions with respect to plaintiff's burden of proof, we need not decide whether the assessment was vitiated by the manner in which it was achieved. Even assuming that the assessment was thereby rendered invalid, plaintiff could not recover without a further showing that she did not in fact owe all or some part of the amount collected. Her attempt to do so failed when the District Court rejected her testimony that she had not been engaged in the numbers business during the period in question. Her proof clearly fell short of meeting her obligation to show that she, in fact, owed *no* tax and that the money collected by the Government was unjustly withheld.

Two cases, United States v. Harris, 216 F.2d 690 (5 Cir. 1954), and Roybark v. United States, 218 F.2d 164 (9 Cir. 1954), illustrate the proper application of the burden of proof rule. In Harris, the plaintiff was an automobile dealer against whom the Commissioner had made a deficiency assessment based upon his disallowance of claimed deductions for purchase prices of automobiles in excess of the legal ceiling. The plaintiff paid the assessment and brought suit in the District Court for refund. In its answer the Government admitted that the original assessment was erroneously based on the theory, subsequently discredited, that amounts paid in excess of lawful ceiling prices could not be deducted, but denied generally that the overceiling prices had actually been paid. The District Court granted summary judgment for the plaintiff and the Government appealed. The Court of Appeals for the Fifth Circuit reversed, emphasizing that in an action for refund the burden is on the taxpayer to establish that the tax he paid was not in fact due. Thus, even though the assessment was based on an erroneous conclusion of law, the plaintiff was required to prove that above legal ceiling prices had actually been paid and that plaintiff did not owe the money which had been paid to the Government.

guilty plea and was put in to test her credibility. Is that right?

"MR. LOMBARDO: That is true your Honor.

"THE COURT: It was not put in for any other purpose.

"MR. LOMBARDO: It was put in to impeach her testimony.

"THE COURT: And that only?

"MR. LOMBARDO: Yes, your Honor.

"THE COURT: Is that what you understand it was in for only?

"MR. BATTER, JR.: Yes."

Roybark v. United States, supra, involved facts almost identical to those in Harris. The Court of Appeals for the Ninth Circuit similarly held that, although the tax had been assessed under an erroneous view of the law, the plaintiffs had the burden, which they had not met, of establishing facts from which a proper determination could be made.

■ The contention advanced in plaintiff's brief, i. e., that the record does not show that she was engaged in a partnership with Chase, requires no discussion beyond the statement that 26 U.S. C.A. § 4401 makes "[e]*ach person* who is engaged in the business of accepting wagers" liable for the tax. The assessment was made against plaintiff and Chase, jointly and severally, and plaintiff is personally and individually liable for such taxes as are due and owing.

■ Finally, plaintiff has argued that the failure of the District Court to grant a continuance to permit her to substitute counsel constituted a denial of due process. Soon after this action was commenced in the District Court, plaintiff wrote to the attorneys then representing her that she did not desire their services in connection with the instant case. Thereafter, on September 12, 1962, one of plaintiff's counsel of record, Carl J. Batter, Sr., filed in the District Court a motion, termed a "Motion Regarding Status of Counsel," by which he sought leave to withdraw as counsel for plaintiff and permission to continue in the cause independently to protect his attorney's lien. Mr. Batter assigned as the reason for his motion the letter from plaintiff indicating that his services were no longer desired. The motion was brought to the court's attention on September 26, 1962, and denied on the ground that plaintiff had not been given notice of a hearing thereon, but without prejudice to renewing the motion upon appropriate notice to plaintiff of a hearing date. Plaintiff did nothing further regarding a change of counsel until the date of trial (January 14, 1963) when she addressed the court and asked if she "could have a chance to get new counsel in this case," stating that she was unable to pay the fees charged by present counsel. The court treated her request as a motion for continuance and denied it as coming too late. This ruling was made the basis for a motion for a new trial which was also denied. We do not believe that in this respect error was committed.

■ It is well settled that the decision to grant or refuse a continuance to permit a change of counsel rests in the sound discretion of the trial court.[14] It is shown by the record that plaintiff was represented by other counsel in the person of one Johnson several months prior to trial. Yet, no formal appearance was at any time entered by him in this proceeding. Plaintiff acknowledged before the District Court that she had known at least one week prior to trial that Johnson no longer represented her. It appears that plaintiff had ample opportunity prior to the trial date to procure other counsel if she so desired. The only prejudice assigned by plaintiff is the failure of counsel to explain the plea of guilty entered in the Arlington County Court. However, plaintiff herself sufficiently explained the plea if her testimony had been credited. From an examination of the record, there is no reason to believe that a different result would have been achieved had plaintiff been represented by other counsel. In the circumstances here we think there was no abuse of discretion and the refusal of the continuance was proper.[15]

For the reasons stated above, the decision of the District Court is

Affirmed.

---

14. See, e. g., Robertson v. Malone, 190 F.2d 756 (5 Cir. 1951); Miller v. Grier S. Johnson, Inc., 191 Va. 768, 62 S.E.2d 870 (1951). See generally Annot. 48 A.L. R.2d 1155.

15. See Crono v. United States, 59 F.2d 339 (9 Cir. 1932); Annot. 66 A.L.R.2d 298.