Robert Lloyd HARRIS and Ellen W. Harris, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Allen C. BYERS and the Estate of Mary M. Byers, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 76–674–A, 76–675–A.

United States District Court, E. D. Virginia, Alexandria Division.

May 2, 1977.

Robert D. Grossman, Jr., Springfield, Va., Jon T. Flask, Washington, D. C., for plaintiffs.

S. Martin Teel, Jr., John J. McCarthy, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND JUDGMENT ORDER

CLARKE, District Judge.

### I.

Plaintiffs in this action have consolidated for trial by this Court without a jury, their claims for refund of income taxes allegedly assessed against them erroneously. Jurisdiction for the action is based on 28 U.S.C. § 1346(a)(1).

This litigation arises out of a pyramid or "Ponzi" scheme with which this Court has more than passing familiarity. Robert D. Johnson, the author of the scheme, represented to prospective investors that he had an ability to corner the market for industrial wine and that investors in the wine "crops" which he proposed to purchase overseas and market in this country would reap fabulous profits. Mr. Johnson in fact did not enter the wine market with the funds furnished him but merely operated a pyramid or "Ponzi" scheme with the funds. His scheme worked on the principle that the initial investors would recoup their investment plus large return not from the fictionalized wine crop but from the investments made by subsequent and more numerous investors. Thus, the pyramid was formed with the less numerous first investors at the top supported by the many later investors. The scheme would work as long as it was fed by a continual flow of larger and more numerous investors. Predictably the scheme eventually fell apart giving rise to considerable litigation in this Court and in others.

The parties have stipulated to the following facts:

1. The plaintiffs, Robert Lloyd Harris and Ellen W. Harris filed joint income tax returns for the taxable years 1972 and 1973.

2. On February 24, 1976, Mr. and Mrs. Harris filed claims for refunds from these two taxable years asserting that certain transactions were entitled to long-term capital gains treatment.

3. On April 1, 1976, the Internal Revenue Service mailed Mr. and Mrs. Harris notice of disallowance of their refund claims.

4. The 1972 transaction arose as follows:

   A. On or about February 28, 1972, plaintiff, Robert L. Harris, entered into an agreement with Ridge Associates & Company whereby he paid to Ridge Associates $25,000 and received in exchange a non-interest bearing promissory note of $25,000 executed to him by Robert D. Johnson for Ridge Associates.

   B. The agreement provided that Ridge Associates & Company would pay to Robert L. Harris by a fixed date the full and just proceeds of certain import franchises, such proceeds guaranteed to amount to no less than $10,750.

   C. On or about November 1, 1972, plaintiff, Robert L. Harris, received from Ridge Associates & Company $35,750, which constituted the full proceeds and recoupment of capital realized as a result of the agreement and note.

5. The 1973 transaction arose as follows:

   A. On November 15, 1972, plaintiff Robert L. Harris, signed an agreement to invest as a partner in a limited partnership known as The November 1972 Group organized to carry on the business of conducting the purchasing of import franchises.

   B. The partnership agreement provided that it would continue for a period of eight months and ten days unless

terminated earlier and that plaintiff Robert L. Harris's capital contribution amounted to the sum of $48,000. It further provided that net profits and net losses would be shared by the partners pro rata to the amount of capital contributed by each partner.

C. On or about July 13, 1973, plaintiff, Robert L. Harris, received $64,440, which represented his distributive share of the proceeds plus recoupment of capital realized by The November 1972 Group activities.

6. Mary M. Byers, now deceased, and plaintiff, Allen C. Byers, filed a joint Federal income tax return for the taxable year ending December 31, 1973.

7. The Commissioner of Internal Revenue assessed a deficiency against them for underreported income and a resulting 5% penalty provided by 26 U.S.C. § 6653.

8. Plaintiff, Allen C. Byers, paid the assessment and on March 31, 1976, filed a claim for refund from the assessments made for the taxable year 1973 asserting several grounds, three of which are at issue in this case:

A. That taxpayers were entitled to capital gain treatment for gains realized from the sale of certain wine franchises;

B. That taxpayers were entitled to an exclusion from gross income for wages received by Mrs. Byers pursuant to a wage continuation plan;

C. That any underpayment of tax for the taxable year of 1973 was not due to negligence or intentional disregard of tax rules and regulations by the taxpayer and, therefore, should not be subject to the 5% penalty of 26 U.S.C. § 6653(a).

9. On July 15, 1976, the Internal Revenue Service mailed Mr. and Mrs. Byers notice of disallowance of their refund claim.

10. The transaction giving rise to the profits realized and claimed as long-term capital gain arose as follows:

A. On or about May 10, 1973, plaintiff, Allen B. Byers, entered into an agreement with Ridge Associates & Company whereby he paid to Ridge Associates $50,000 and received in exchange a non-interest bearing promissory note of $50,000 executed to him by Robert D. Johnson for Ridge Associates.

B. The agreement provided that Ridge Associates & Company would pay to Allen B. Byers by a fixed date the full and just proceeds of certain import franchises, such proceeds guaranteed to amount to no less than $21,500;

C. On or about January 10, 1973, plaintiff, Allen C. Byers, received from Ridge Associates & Company $71,500, which constituted the full proceeds plus recoupment of capital realized as a result of the agreement and the note.

11. During the taxable year 1973, Mary M. Byers received the amount of $2,180, which amount the plaintiffs claim constituted wages or payments in lieu of wages paid under a wage continuation plan described in 26 U.S.C. § 105(d).

12. Mary M. Byers died on November 6, 1975. She is the deceased spouse of Allen C. Byers, who is the duly qualified and appointed Administrator of her estate.

The parties have agreed that the issues are limited to:

(1) Whether the profits realized by the plaintiffs from their transactions with Robert D. Johnson and his wine import or pyramid scheme constitute ordinary income or capital gain;

(2) Whether the amount of $2,180 received during the taxable year 1973 by Mary M. Byers, an employee and officer of the Camar Corporation, constitutes income excluded from tax assessment by the provisions for wage continuation plans found in 26 U.S.C. § 105(d);

(3) Whether the Estate of Mary M. Byers and plaintiff, Allen C. Byers, should be subject to the penalty provision of 26 U.S.C. § 6653(a) for negligent or intentional underreported income for the taxable year of 1973.

Evidence in the form of oral testimony, depositions, stipulations, and exhibits were presented at trial and the parties have submitted memoranda and briefs to the Court for its final decision. On request of the plaintiffs, the Court directs the Clerk to file plaintiffs' Memorandum in Response to Post-Trial Memorandum of Defendant.

## II.

The Court will first consider two objections raised by defendant at trial, and pursued subsequent to trial by briefs, with regard to plaintiffs' amended pleading and plaintiffs' attempt to introduce the criminal file of *United States v. Robert D. Johnson,* Cr. 216–74A, into evidence.

Defendant complains that plaintiffs should not be allowed to amend their complaint at the day of trial to include an alternative claim that the alleged long-term capital gain realized by the plaintiffs resulted from the *sale or exchange of their rights in a Ponzi or pyramid scheme.* Defendant contends *that the alternative claim is at* variance with the refund claim filed by plaintiffs claiming long-term capital gains from the *sale of wine franchises.* The Court notes that it might appear at first blush from a literal reading of the amended pleading and the refund claim that a variance arises between claims for investment gains in wine franchises and a pyramid scheme. However, the Court agrees with the plaintiffs that whether the transaction is designated a sale of interests in a pyramid scheme or a sale of interests in wine franchises is inconsequential, for it appears from the record that defendant has had notice long before the refund claims were filed of the nature of the transaction giving rise to the claims, including the specific amounts involved, characterization, factual basis and other relevant facts. It is the opinion of the Court that this notice satisfies the requisites for amendment, *United States v. Felt and Tarrant Mfg. Co.,* 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); *Real Estate-Land Title & Trust Co. v. United States,* 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542 (1940); and that defendant has been neither surprised nor mislead by the refund claim and alternative pleading. Therefore, the Court finds no variance and directs that the amendment to the Complaint be filed.

Defendant also complains that the plaintiffs' exhibit, consisting of the criminal file on Robert D. Johnson and his fraudulent pyramid scheme, should not be admitted on the grounds that it was not listed in the plaintiffs' pretrial list of exhibits, it is hearsay, and it is irrelevant to the issues in the case.

The Court finds that the exhibit objected to was not listed in the plaintiff's pretrial list of exhibits as required by Local Rule 13 and further, that prosecution of Robert D. Johnson for his activities relating to the Ponzi or pyramid scheme based on the fictionalized wine import and franchise business is immaterial to this case. The Court, therefore, holds that the criminal file, *United States v. Robert D. Johnson,* Cr. 216–74A, not be admitted as an exhibit into evidence. However, the Court notes that it is quite familiar with the activities carried on in the name of this fraudulent wine franchise business and takes judicial notice pursuant to Rule 201, Federal Rules of Evidence, of the Ponzi or pyramid scheme perpetrated by Robert D. Johnson against persons such as the plaintiffs.

## III.

The Court will next consider the issue of whether the profits realized by the plaintiffs from their transactions with Robert D. Johnson and his wine import or pyramid scheme constitute ordinary income or capital gain.

The issue appears to be one of first impression. Plaintiffs proceed on the theory that the money they turned over to Ridge Associates and The November 1972 Group purchased for them interests in the Ponzi scheme which constituted capital assets and which they sold more than six months later when Ridge Associates and The November 1972 Group remitted to them specified amounts generated from the proceeds of the Ponzi scheme. Plaintiffs claim that

their interests constituted intangible assets such as good will and covenants not to compete as established in *Aaron Michaels,* 12 T.C. 17 (1949) and *Commissioner of Internal v. Killian,* 314 F.2d 852 (5th Cir. 1963), and analogize the alleged purchase and sale of their interests to the purchase and sale of a lottery ticket. *Gene G. Tessers,* ¶ 66, 172 P-H Tax Ct. Mem. (1960).

Defendant claims that even assuming the plaintiffs owned interests in the wine or Ponzi scheme which constituted capital assets, there was no sale or exchange allowing capital gain treatment but only a collection or satisfaction of a claim due under the agreements made with Ridge Associates & Company and The November 1972 Group.

The Court notes that the two transactions should be distinguished from each other in that the agreement made by plaintiffs Harris and Byers with Ridge Associates & Company involved promissory notes and a guaranteed return. The transaction conducted by plaintiff Harris via The November 1972 Group was a partnership venture set up without promissory notes or a guaranteed return and subject to losses as well as profits.

■ Plaintiffs must carry the burden of showing error in the Commissioner's determination and the exact amount of refund that is due. *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932); *Compton v. United States,* 334 F.2d 212, 216 (4th Cir. 1964). In order to have their profits adjudged to be capital gain, the plaintiffs have the burden of proving (1) that the property in question was a capital asset, (2) that there has been a "sale or exchange" of that property, and (3) that it has been held for more than six months prior to the "sale or exchange." 26 U.S.C. § 1222(4). *Dobson v. Commissioner,* 321 U.S. 231, 64 S.Ct. 495, 88 L.Ed. 691 (1944); *Osenbach v. Commissioner,* 198 F.2d 235, 237 (4th Cir. 1952); *Kronner v. United*

*States,* 110 F.Supp. 730, 126 Ct.Cl. 156 (1953).

Assets are generally defined as property of any kind, whether real or personal, tangible or intangible, legal or equitable, which can be made available for the payment of debts. *Spagnola v. State,* 237 Iowa 645, 23 N.W.2d 433; Black's Law Dictionary 151 (4th ed. 1951). Capital assets are defined generally in 26 U.S.C. § 1221 and by much case law as assets held by the taxpayer which is not used in his trade or business.

■ In considering the "interests" plaintiffs claim to have purchased, the Court finds the cases cited by plaintiffs to be inapposite and further, is unable to fit the "interests" within the general definition of "assets." The "interests" obtained pursuant to both agreements were not defined by quantity, i. e., how much or what share of the wine scheme or Ponzi scheme did the parties obtain. (Plaintiff Harris's 12% ownership of the partnership profits from The November 1972 Group is irrelevant to the issue because of the amount or share of the scheme obtained by the partnership was not defined. The question remains: Plaintiff Harris obtained 12% of what amount?) See *Ortiz Oil Co. v. Commissioner of Internal Revenue,* 102 F.2d 508, 509 (5th Cir. 1939). Thus, there was no way to determine what right, if any, plaintiffs had in the proceeds plaintiffs were led to believe would result from the scheme.[1] In addition, the scheme was fraudulent *ab initio* and in all aspects. Plaintiffs' interests were based on not only Robert D. Johnson's ability to defraud subsequent "investors" but on Robert D. Johnson's whim as to whether and to what extent he would share his ill-gotten gains. The Court finds that plaintiffs obtained interests in nothing but a puff of smoke. Such interests are not property which can be made available for the payment of debts and, therefore, are not definable as assets, capital or otherwise. The Court concludes

---

1. It is true that under the agreement made with Ridge Associates & Company the plaintiffs had a right to the amount of the promissory note given and the guaranteed return. However, this right was not based on the interests plain-

tiffs held in the proceeds of the scheme, but on the personal liability of Robert D. Johnson as signer of the note and guaranty on behalf of Ridge Associates.

that plaintiffs have not carried the burden of proving that the property in question, their interests in the wine or Ponzi scheme, was a capital asset.

The Court takes care to note, however, that even assuming plaintiffs held interests in the scheme which constituted capital assets, they have not carried the burden of proving a sale or exchange of those assets by the transactions with either Ridge Associates & Company or The November 1972 Group.

Plaintiffs attempt to compare the alleged purchase and sale of their interests to the purchase and sale of a lottery ticket prior to the termination of the lottery. The Court is of the opinion that such a comparison is illogical. The Ponzi scheme was not a lottery but a fraud without a fixed termination date. In addition, the Court is unable to adduce from the evidence presented a transfer of plaintiffs' interests in the fraud similar to the lottery transfer plaintiffs describe.

█ As for the transaction with Ridge Associates & Company, plaintiffs Harris and Byers put up $25,000 and $50,000, respectively, for which they received promissory notes for the same amount due on a fixed date. Plaintiff Harris was guaranteed a return in excess of his contribution in the amount of $10,750 and plaintiff Byers was guaranteed $21,500 under the same terms. Although the parties were told they could possibly recover more than their contributions and the guaranteed excess, they were protected by their contract from receiving less. The Court finds on the basis of these facts and circumstances that the substance of the transaction constituted a loan and repayment with interest and not a purchase followed by resale. See *Estate of Nordquist v. Commissioner of Internal Revenue*, 481 F.2d 1058 (8th Cir. 1973); *Osenbach v. Commissioner*, 198 F.2d 235, 236–237 (4th Cir. 1952).

█ As for the transaction involving The November 1972 Group, plaintiff Harris came together with others to establish this group as a limited partnership for the pur-

pose of investing the fund created from the partners' contributions in the wine or Ponzi scheme of Robert D. Johnson. The partners agreed to share the profits or losses which might arise from the proceeds obtained by the partnership from the scheme. Plaintiff Harris contributed $48,000 or 12% of the total fund invested by the partnership and recovered $64,440 or 12% of the proceeds obtained by the partnership from the scheme. The facts indicate that he remained a member of the partnership throughout the time of the enterprise and did not transfer his interest in it at any time prior to its termination. The Court finds that the substance of the transactions conducted by The November 1972 Group on behalf of plaintiff Harris as a partner constituted a purchase of unstipulated proportions of the wine or Ponzi scheme followed by the realization of ordinary income from the proceeds arising from the scheme on the part of The November 1972 Group and its partners. See *Ortiz Oil Co. v. Commissioner of Internal Revenue*, 102 F.2d 508, 509 (5th Cir. 1939). Therefore, the Court concludes that the plaintiffs have not carried the burden of proving a "sale or exchange" of their interests in the wine or Ponzi scheme to the transactions with either Ridge Associates & Company or The November 1972 Group.

For these reasons, the Court holds that the income realized by the plaintiffs from their transactions with Robert D. Johnson's wine or Ponzi scheme do not constitute capital gain for which special capital gain treatment should be accorded.

### IV.

The Court will next consider the issue whether the amount of $2,180 received during the taxable year 1973 by Mary M. Byers, an employee and officer of the Camar Corporation, constitutes income excluded from tax assessment by the provisions for wage continuation plans found in 26 U.S.C. § 105(d).

As stated above, plaintiffs must carry the burden of showing error in the Commissioner's determination and the exact amount of

refund that is due. *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932); *Compton v. United States,* 334 F.2d 212, 216 (4th Cir. 1964).

In order to receive the benefit of the provisions for wage continuation plans set out in 26 U.S.C. § 105(d), it is well established that the taxpayer must prove (1) the existence of such a plan, and (2) that the plan is for the benefit of employees. *Larkin v. Comm'r of Internal Revenue,* 394 F.2d 494 (1st Cir. 1968); *E. B. and Lillian R. Smith,* ¶ 70, 243 P-H Tax Ct. Mem. (1965); *Bogene, Inc.,* ¶ 68, 147 P-H Tax Ct. Mem. (1963).

The evidence as to the existence of such a plan in this case is as follows: Camar Corporation board members, Robert L. Harris, Allen C. Byers and Paul E. Schwartz, discussed instituting such a plan at a "bull session" in the early Sixties; they could produce no written evidence of the plan, such as an entry in the minutes of a board meeting or a resolution or agreement, although Mr. Byers testified that he thought there was a writing, the whereabouts of which he could not determine; Mr. Harris admitted that as a C.P.A., he would advise his business clients to reduce the formulation of such a plan to writing but that he failed to see that a writing of the plan was made for the Camar Corporation for which he serves as director; Mr. Harris testified that the details of the plan, such as who would be covered and for what length of time payments would be made, were not formulated; Mr. Byers testified that it was understood that all employees would be covered and that each individual would receive 100% of his or her salary during the term of absence from work for illness; however, he further stated that after Mrs. Byers had been sick for a year they decided to reduce payments to 50%; both Mr. Harris and Mr. Byers stated that Mrs. Byers had knowledge of the plan but that subsequent short-term employees were not informed of it.

It is true that Treasury Regulation § 1.105–5 provides that a plan need not be written and that an arrangement, program, policy or custom having the effect of a plan may be liberally construed to satisfy the exclusion of Section 105(d); however, the Tax Court in *John C. Lang,* 41 T.C. 352 (1963) stated:

> "A plan presupposes a predetermined course of action under prescribed circumstances, and a plan, for purposes of section 105(d), must do more than anticipate the favorable exercise of discretion by the employer when sickness arises. . . . [T]he employer must commit himself to certain rules and regulations governing payment; these rules must be made known to his employees as a definite policy; it is not enough that he merely lets it be known that payments may be made to deserving employees if they are absent from work for illness. The employer's rules, adopted or crystallized by policy or custom, may offer varying treatment for employees, but the rules must be determinable before the employee's sickness arises."

The Court held on the basis of facts similar to this case, i. e., an unwritten and unpublished plan, lack of established terms and procedures, and the discretionary control of management, that no plan as contemplated by 26 U.S.C. § 105(d) and the Treas. Reg. § 1.105–5 had been instituted by the taxpayer's employer.

The First Circuit in *Larkin v. Comm'r of Internal Revenue,* 394 F.2d 494 (1st Cir. 1968) and the Ninth Circuit in *Estate of E. W. Chism v. Comm'r of Internal Revenue,* 322 F.2d 956 (9th Cir. 1963) reached similar conclusions in cases where there was no written evidence of a plan, employees remained uninformed and the terms were unspecified and left to discretionary ad hoc formulation.

The cases cited by plaintiffs to uphold their position do not control and must be distinguished because in each situation, the plan was known to employees, administered according to fixed and non-arbitrary terms, and most importantly, was evidenced by a written resolution and an entry in the minutes of a board meeting. See *E. B. & Lillian R. Smith,* ¶ 70, 243 P-H Tax Ct.

Mem. (1965); *Bogene, Inc.,* ¶ 68, 147 P-H Tax Ct. Mem. (1963).

The Court finds that the Camar Corporation may have intended to formulate a plan, but that plaintiffs have failed to carry the burden of proving that the Corporation actually instituted a wage continuation plan as provided by 26 U.S.C. § 105(d) and Treas. Reg. § 1.105–5, on the basis of the facts that there is no written evidence of the plan, that terms of the plan were not fixed but subject to arbitrary ad hoc decision making by management, and that the short-term employees were uninformed of the plan. Accordingly, it is held that the $2,180 plaintiffs claim Mary C. Byers received during the taxable year 1973 pursuant to such a plan is not excluded from tax assessment by the provisions for wage continuation plans found in 26 U.S.C. § 105(d).

### V.

The final issue for consideration is whether the Estate of Mary M. Byers and plaintiff, Allen C. Byers, should be subject to the penalty provision of 26 U.S.C. § 6653(a) for negligent or intentional underreported income for the taxable year of 1973.

Plaintiff, Mr. Byers, admits that he failed to report $21,500 as income in his joint tax return filed for the taxable year of 1973. However, plaintiff Byers contends that his failure was due to his extreme distress regarding his wife and her illness, and, therefore, should be treated as an excusable mistake not subject to the tax penalty of 26 U.S.C. § 6653(a) for negligent or intentional underreporting of income.

The taxpayer has the burden of proving that the Commissioner's addition to tax on the ground of negligence or intentional disregard of tax rules and regulations is erroneous. He must overcome the presumption of the correctness of the Commissioner's determination by proving that his tax underpayment was due neither to the absence of reasonable care nor to an intent to defraud by disregarding tax rules and regulations. *Salapatas v. Comm'r of Internal Revenue,* 446 F.2d 79 (7th Cir. 1971);

*Marcello v. Comm'r of Internal Revenue,* 380 F.2d 499 (5th Cir. 1967).

It is apparent then that a question requiring a factual determination on the basis of submitted evidence is presented. Testimony by plaintiff taxpayer, Mr. Byers, indicated that a check for $71,500 was received from Ridge Associates sometime during January or February 1973. It represented a return to him of $21,500 on a $50,000 advance made to Ridge Associates & Company and held heretofore to constitute a loan and interest. Mr. Byers claimed that he was unaware of the receipt of the check and of its deposit in his bank account. However, he did admit to having used the money once deposited to purchase and subsequently administer a certificate of deposit. Mr. Byers also stated in his written stipulations submitted prior to trial that he reported losses sustained by him during the taxable year 1973 from other investments made in the wine or Ponzi scheme. The stipulation points out that Mr. Byers failed to report the full amount of his losses thereby entitling him to additional deductions agreed to by defendant.

The Court is of the opinion on the basis of these facts that plaintiff, Allen C. Byers, was sufficiently aware of his cash flow during the taxable year 1973 to be held to an accounting for, at the very least, *negligent* failure to report income in the amount of $21,500. The Court is, therefore, of the opinion that plaintiff Byers has failed to carry his burden of proving that the Commissioner's addition to tax on the ground of negligence or intentional disregard of tax rules and regulations pursuant to 26 U.S.C. § 6653(a) is erroneous.

For the reasons given, judgment is entered for the defendant on all issues.