**John D. and Kathleen DRAPER, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 03–1389T.

United States Court of Federal Claims.

Oct. 5, 2004.

John D. Draper and M. Kathleen Draper, Woodbridge, VA, pro se plaintiffs.

Benjamin C. King, Jr., U.S. Department of Justice, Washington, DC, with whom were Eileen J. O'Connor, Assistant Attorney General, and Chief, Court of Federal Claims Section Mildred L. Seidman, for defendant.

**OPINION**

FIRESTONE, Judge.

Pending before the court is the government's motion to dismiss the plaintiffs' claim for a tax refund on the ground that the plaintiffs filed their initial refund claim with the Internal Revenue Service ("IRS") beyond the period of limitations, and therefore this court does not have jurisdiction to entertain the plaintiffs' suit. For the reasons set forth below the government's motion to dismiss is **GRANTED.**

## BACKGROUND

The following jurisdictional facts are not in dispute. The plaintiffs, John D. and M. Kathleen Draper, invested $10,000 in Inter-Link Video Phone Partners, L.P. ("Inter-Link"), a limited partnership, in April 1993. On April 12, 1993, the plaintiffs received a "confirmation of investment" letter from InterLink which described the plaintiffs' investment as the purchase of two "units" in Inter-Link. Although the plaintiffs understood that InterLink would make monthly interest payments based on a twelve percent annual rate and that InterLink would return the $10,000 in the twenty-fifth month, there is no dispute that the plaintiffs did not receive a promissory note or any other evidence of a bona fide debt from InterLink.[1] Indeed, none of the documents that the plaintiffs received from InterLink referred to the plaintiffs' $10,000 investment as a loan or debt.

In June 1993, the plaintiffs moved to Rota, Spain, where Mr. Draper was stationed with the United States Navy, and remained there until July 1996. Also in June 1993, and again in November 1993, the Securities & Exchange Commission ("SEC") attempted to notify the plaintiffs of legal proceedings against InterLink for securities fraud. These letters were eventually forwarded to the plaintiffs in Spain.

On November 15, 1993, the United States District Court for the Central District of California granted an SEC motion for summary judgment against InterLink Data Network of Los Angeles, Inc., InterLink Fiber Optic Partners L.P., InterLink Video Phone Partners L.P., and their founder, Michael Gartner, for securities fraud and the sale of unregistered securities. According to the statement of uncontroverted facts set forth in that opinion, InterLink fraudulently solicited funds from potential "investors" by telling them that InterLink held exclusive licenses for 16 different patents related to video telephone technology, that InterLink was installing fiber-optic cable in Los Angeles, and that revenues from InterLink's fiber-optic cable network would be used to make interest pay-

ments. In fact, none of these claims was true. InterLink had no patent rights and no fiber-optic cable network, and interest payments were made solely from the revenues generated by new investors. In short, Inter-Link Video Phone Partners, L.P. was part of a pyramid, or Ponzi, scheme. Investors thought they were investing in a limited partnership that possessed various income-producing assets, when in reality everything about the venture was a fraud.

Because limited partnership interests are considered "investment contracts" and thus fall within the definition of "security" in section 2(1) of the Securities Act, 15 U.S.C. § 77b(a)(1) (2004), and section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10) (2004), the district court concluded that InterLink had committed "securities" fraud. *Sec. & Exch. Comm'n v. InterLink Data Network of Los Angeles, Inc.*, 1993 WL 603274, at *9–10 (C.D.Cal.1993). As a result, InterLink was ordered to disgorge the $12,285,035 it had fraudulently obtained from victims such as the plaintiffs. Unfortunately, the plaintiffs never received reimbursement for their loss.

When the plaintiffs returned to the United States in July 1996, they attempted to contact the SEC regarding claims for reimbursement against InterLink that the SEC had alluded to in previous communications, but to no avail. Finally, on April 16, 2001, the plaintiffs filed an Amended U.S. Individual Income Tax Return, Form 1040X, for tax year 1994. The plaintiffs' original tax return for tax year 1994, which they filed on October 18, 1995, showed that the plaintiffs earned $10,842 in capital gains in addition to ordinary income and paid total tax of $14,042 in 1994. The amended return reduced the plaintiffs' income by $10,000 "due to a security becoming worthless" and claimed a tax refund of $2,856 plus interest. The IRS disallowed the plaintiffs' claim on June 6, 2001 because under I.R.C. § 6511(a), a claim for a refund based on a loss must be filed within three years of filing the return for the tax year in question.

---

1. The plaintiffs apparently concede that their investment in InterLink was not a bona fide debt and that therefore they do not qualify for a bad debt deduction under I.R.C. § 166.

The plaintiffs appealed the disallowance, arguing that they were entitled to a seven year statute of limitations under § 6511(d)(1). That subsection provides a seven year statute of limitations for refund claims that relate to a worthless debt deduction under I.R.C. § 166 or a worthless security deduction under I.R.C. § 165(g). I.R.C. § 6511(d)(1). The plaintiffs argued that because they had lost their investment in a "security," they were entitled to rely on the worthless security deduction under § 165(g) and thus were covered by the seven year statute of limitations. Through correspondence, the plaintiffs detailed the nature of their investment and the SEC's suit against InterLink. The IRS eventually rejected the plaintiffs' argument and held that the plaintiffs' investment in a Ponzi scheme did not meet the definition of "security" in § 165(g)(2).[2] In support of its decision, the IRS cited *Harris v. United States,* 431 F.Supp. 1173 (E.D.Va.1977), which held that any interest in a Ponzi scheme could not be considered a capital asset. Because a security must also be a capital asset in order to qualify for a worthless security deduction under § 165(g), the IRS argued, the plaintiffs' interest in a Ponzi scheme could not qualify for the deduction. Therefore, the IRS maintained, the plaintiffs' refund claim had to be filed within three years, by October 18, 1998; because it was filed more than three years after filing the return it was time-barred.

The plaintiffs filed this action on June 5, 2003 seeking a tax refund of $2,856 plus interest. The government moved to dismiss on the ground that the plaintiffs failed to file a timely claim with the IRS and therefore they have failed to meet a jurisdictional requirement for maintaining a suit in this court. I.R.C. § 7422(a). The plaintiffs contend that they, in fact, filed a timely claim before the IRS. The plaintiffs maintain that they are entitled to the worthless security deduction, and therefore their claim, which was filed within the seven year statute of limitations provided in § 6511(d)(1), is timely.

## DISCUSSION

### A. Standard of Review and Jurisdiction

The government has filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). In considering a motion to dismiss for lack of jurisdiction the court construes the allegations of the complaint favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, if the motion to dismiss challenges the truth of those jurisdictional facts, then the court may look beyond the pleadings to consider all available evidence to determine jurisdiction. *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir. 1991). Ultimately, the burden is on the plaintiff to establish that the court has subject matter jurisdiction to hear the case. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

The question presented in this motion to dismiss is whether the plaintiffs complied with the procedural requirements for maintaining a refund suit in this court under I.R.C. § 7422(a),[3] by duly filing a claim for refund with the IRS. In order to "duly" file such a claim, the plaintiffs must have filed within the statute of limitations provided in I.R.C. § 6511.[4] Compliance with these pro-

---

**2.** In its decision, the IRS actually referred to Treas. Reg. § 1.354–1 as the source of a definition for "security," but because this regulation does not contain such a definition, it is assumed that the IRS intended to refer to I.R.C. § 165(g)(2).

**3.** I.R.C. § 7422(a) provides:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with

the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

**4.** I.R.C. § 6511 provides:
(a) Period of limitation on filing claim. Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed

cedures is a necessary prerequisite to this court's jurisdiction to entertain a suit for a tax refund. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990).

Section 6511 establishes two relevant limitations periods. As set forth in § 6511(a), a taxpayer ordinarily has only three years from the date on which he filed his return to file a claim for a refund. § 6511(a). Thus, if § 6511(a) applies, then the plaintiffs would have had only until October 18, 1998 to file their claim for a refund for tax year 1994. If, however, their refund is legitimately based on a deduction for a worthless security loss under § 165(g), then a seven year statute of limitations from the date prescribed by law for filing a return applies. § 6511(d)(1). Accordingly, if the plaintiffs can establish that their investment in InterLink is a "security" within the meaning of the Internal Revenue Code, then their claim was timely because they had until April 15, 2002 to file their claim. If the plaintiffs' investment in InterLink does not qualify as a "security" within the meaning of § 165(g), then the plaintiffs' refund claim was not timely. If the claim was not timely, then the plaintiffs failed to comply with § 7422(a) and this court may not grant them relief.

Recognizing their burden, the plaintiffs argue that their investment in InterLink qualifies as a "security" and therefore their claim was timely under § 6511(d)(1). The government contends that the plaintiffs' investment does not meet the definition of a "security," and therefore their loss does not qualify for the worthless security deduction in § 165(g). Consequently, the government argues, their refund claim was time-barred under § 6511(a).

by the taxpayer, within 2 years from the time the tax was paid.
. . .
(b) Limitation on allowance of credits and refunds.
  (1) Filing of claim within prescribed period. No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period. . . .
(d) Special rules applicable to income taxes.

**B. Plaintiffs' Investment in InterLink does not meet the Definition of "Security" Under Section 165(g)**

It is understandable that the plaintiffs would assume their investment in the InterLink partnership qualifies as a security under I.R.C. § 165(g), considering that those who perpetrated a fraud against them were found to have committed *securities* fraud. Certainly their investment was considered a security under securities law. *See Inter-Link,* 1993 WL 603274, at *9 (C.D.Cal.1993) (noting that both section 2(1) of the Securities Act and section 3(a)(10) of the Exchange Act include "investment contracts," which "limited partnership interests are generally found to be," within the definition of "security"). However, when passing upon the deductibility of an item for federal tax purposes, this court is bound by the Internal Revenue Code and its own set of definitions.

The statute at issue provides as follows:

(g) Worthless securities.

(1) General rule. If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.

(2) Security defined. For purposes of this subsection, the term "security" means—

(A) a share of stock in a corporation;

(B) a right to subscribe for, or to receive, a share of stock in a corporation; or

(C) a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation or by a govern-

(1) Seven-year period of limitation with respect to bad debts and worthless securities. If the claim for credit or refund relates to an overpayment of tax imposed by subtitle A on account of—
(A) The deductibility by the taxpayer, under section 166 or section 832(c), of a debt as a debt which became worthless, or, under section 165(g), of a loss from worthlessness of a security . . . the period shall be 7 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.

ment or political subdivision thereof, with interest coupons or in registered form.

I.R.C. § 165(g).

Thus, in order to qualify for a deduction under § 165(g), the taxpayer's worthless investment must be both a "capital asset" and a "security," as defined in § 165(g)(2).

A "capital asset" is any "property held by the taxpayer" subject to several exceptions, none of which apply to the plaintiffs' investment. I.R.C. § 1221. An interest in a partnership is generally treated as a capital asset under the Internal Revenue Code. *See* I.R.C. § 741; Treas. Reg. § 1.741–1 (establishing that gain or loss from the sale of a partnership interest shall be considered as gain or loss from the sale of a capital asset). Therefore, if the plaintiffs' investment in InterLink could be characterized as a partnership interest, then it would also be characterized as a capital asset. In upholding the disallowance of plaintiffs' claim, the IRS asserted that the investment was not a capital asset, relying on *Harris v. United States*, 431 F.Supp. 1173 (E.D.Va.1977). In that case, the taxpayer sought capital gains treatment for gains he had realized from his participation in a Ponzi scheme. Although the taxpayer believed at the time that he had purchased a twelve percent ownership interest in a partnership, in fact the partnership was a fraud. The court determined that the taxpayer "obtained interests in nothing but a puff of smoke" and therefore the interests were "not definable as assets, capital or otherwise." *Id.* at 1178.

The plaintiffs argue that the reasoning in *Harris* should not apply in this case because the issue here is whether the investment in a limited partnership is a "capital asset" and not whether profits realized from a pyramid scheme constitute ordinary income or capital gain. Accordingly, the plaintiffs argue that the *Harris* holding should not bar their recovery in this case. The court agrees with the plaintiffs that the *Harris* decision is distinguishable from this case. Nonetheless, for the reasons that follow, the outcome is not affected. As discussed below, regardless of whether the plaintiffs' investment in Inter-Link is a "capital asset," it does not fit the definition of a "security" in § 165(g) and

therefore the plaintiffs do not qualify for a worthless security deduction.

Section 165(g)(2) provides three types of investments that may qualify as a security: a share of stock in a corporation; a right to subscribe for, or to receive stock in, a corporation; or evidence of indebtedness, issued by a corporation or by a government, with interest coupons or in registered form. According to the plain language of the statute, for each of these qualifying categories of securities, there is a requirement that they be issued by a *corporation or a government entity.*

Because InterLink Video Phone Partners, L.P. is neither a corporation nor a government entity, but is instead a limited partnership, the plaintiffs' investment in InterLink cannot qualify as a "security" under § 165(g)(2). Corporations and partnerships are treated separately under the Internal Revenue Code. *See Citron v. Commissioner,* 97 T.C. 200, 210 n. 7, 1991 WL 145082 (1991) ("For purposes of federal taxation, ... a limited partnership interest is usually dealt with under subchapter K and is not treated as a 'security' "). A "partnership" is an "unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of [the Internal Revenue Code], a trust or estate or a corporation." I.R.C. § 7701(a)(2). Thus, a partnership, including a limited partnership, is something other than a corporation.

It is for this reason that plaintiffs' reliance on the legislative history surrounding I.R.C. § 6511(d) is misplaced. The plaintiffs argue that Congress' rationale for creating a seven year statute of limitations for "worthless securities" applies with equal force to the plaintiffs' investment. In providing a seven year statute of limitations, Congress expressed concern over taxpayers' difficulty in accurately determining the year in which certain investments, securities and debts, become worthless. In the context of such difficulty, a three year statute of limitations would often lead to harsh results, as it may take more than three years to determine when the investment became worthless. The plaintiffs claim that they were similarly unable to de-

termine when their investment became worthless. Therefore, the plaintiffs argue, because their circumstances fall within Congress' intent, this court should apply the seven year statute of limitations from § 6511(d)(1). Unfortunately, regardless of the difficulty the plaintiffs experienced in determining when their investment became worthless, this court cannot ignore the plain words of the statute and extend the statute of limitations beyond its limits. Even if Congress' rationale in providing for a seven year statute of limitations for refunds related to worthless securities applies equally to the plaintiffs' facts, this court cannot change the words of a statute to avoid a harsh result. *See, e.g., Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 1032, 157 L.Ed.2d 1024 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding"). Congress has only provided a seven year statute of limitations for worthless securities and bad debts; it has not similarly extended the statute of limitations for worthless investments in limited partnerships. This court is bound by Congress' plain words.

Moreover, the court notes that, contrary to the plaintiffs' assertions, it was not impossible for the plaintiffs to have complied with the three year statute of limitations set forth in § 6511(a). The plaintiffs claim that, while the SEC's action against InterLink was concluded in 1993, the entire InterLink matter was not resolved until May 27, 1998, when the SEC concluded proceedings against other persons who had assisted "in the perpetration of securities fraud against the plaintiffs." Pls.' Br. at 5. The plaintiffs argue that they could not have known that they would not receive any reimbursement for their investment until after the May 1998 date. Thus, they contend that under the government's reading of the applicable statute of limitations, they should have filed for a refund by April 15, 1998, i.e., one month before they learned that they would not recover anything.

The plaintiffs' argument rests on a miscalculation. In particular, plaintiffs have miscalculated the date on which the statute of limitations would have run. The plaintiffs did not file their 1994 tax return until October 18, 1995; therefore under the terms of § 6511(a) they had until October 18, 1998 to file a refund claim, which was almost five months after they learned the results of the SEC's actions in May 1998. I.R.C. § 6511(a); *Weisbart v. United States Dep't of Treasury,* 222 F.3d 93, 95 (2d Cir.2000) ("[A] refund claim need only be filed within three years of the filing of a tax return, *irrespective of the timeliness of that return*"). The IRS pointed this out to the plaintiffs on February 4, 2002, as the plaintiffs' own exhibit shows. Pls.' Ex. 2. Accordingly, the plaintiffs were not in a total "no-win" situation, as they claim. This is not to say that the application of the proper statute of limitations has not caused a painful result in this case. However, the court is duty bound to apply the proper statute of limitations, as a term of the government's consent to be sued, in all cases against the government. *Dalm,* 494 U.S. at 608–10, 110 S.Ct. 1361 (1990) ("If any principle is central to our understanding of sovereign immunity, it is that the power to consent to ... suits is reserved to Congress [rather than the courts]").

Because the plaintiffs did not file their refund claim within the three year period provided under § 6511(a), their claim was not timely filed and this court does not have jurisdiction to consider the claim under I.R.C. § 7422 and I.R.C. § 6511. Accordingly, the case must be dismissed.

For the foregoing reasons, the court **GRANTS** the government's April 30, 2004 motion to dismiss the plaintiffs' claim for lack of subject matter jurisdiction. The Clerk is directed to enter judgment accordingly, each party to bear its own costs.

**IT IS SO ORDERED.**