Harvey VEINO, Appellant,

v.

John L. FAHS, Individually, and as Former Collector of Internal Revenue for the District of Florida, Appellee.

No. 16719.

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

William R. Frazier, Hill & Frazier, James P. Hill, Jacksonville, Fla., for appellant.

Thomas N. Chambers, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Ellis N. Slack,

Helen A. Buckley, Loring W. Post, Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., Edith House, Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

The question presented by this appeal is whether the District Court, sitting without jury, was clearly erroneous in holding that the appellant, Harvey Veino, failed to sustain the burden resting on him of proving that the determination of income tax deficiencies for the years 1943 through 1950 was incorrect, and in holding that the 50% fraud penalties were correctly imposed. The Commissioner of Internal Revenue had assessed income tax deficiencies, 25% delinquency penalties, 50% civil fraud penalties, and interest for said years in the aggregate amount of $126,319.94. The amount was paid by appellant, and after his claim for refund had been declined, this action was brought against the Collector. The court below, upon full findings of fact and conclusions of law, entered a judgment in effect denying all the relief sought by appellant.[1]

The net worth increases and expenditures method of accounting was used to compute and determine the appellant's liability. The parties stipulated to a schedule as to all items except $70,050.00 cash found by the Internal Revenue Agent in appellant's safety deposit box when an examination was made in March, 1951.

Appellant testified that this money was deposited in the box prior to 1943, and had made a like contention in his dealings with the Commissioner. The Commissioner found, however, that the entire $70,050.00 had been placed in the safety deposit box subsequent to 1943. Inasmuch as appellant had made five entries into the box during the tax years,

the Commissioner allocated to each entry a deposit of the sum of $14,010.00 arrived at by dividing the number of entries into the total amount found in the box. Since no entries were made into the box subsequent to the year 1946, the entire amount was allocated to that and the preceding years.

The trial court rejected appellant's testimony that the $70,050.00 had been brought by him from Vermont when he moved from there to Florida about 1922. Appellant testified that the entire amount had been placed in the box in 1937 and that substantially no money had been added to or taken from the original amount placed therein between then and the time it was opened in 1951. The trial court heard his testimony and found it inherently unbelievable and rejected it, cf. Geigy Chemical Co. v. Allen, 5 Cir., 1955, 224 F.2d 110, 114, just as the Commissioner had rejected his statement.

The court's findings were based upon several grounds, including the unreasonableness of appellant's testimony in several respects: that he was completely uneducated, not being able to read and write, and had worked in Vermont as a farm hand, later going into the logging and lumber business for himself; that he did not, while there, own a home, but was in such straitened circumstances that his wife had to take in washing and keep boarders. No record was kept of his business operations in Vermont and the testimony wholly failed to show how appellant could have accumulated such a sum of money.

According to appellant, when he moved to Florida about 1922 he engaged in sawmilling and the retail selling of lumber. Proof, made of the income reported to the government from the time he moved to Florida until 1943, reflected less income than would have been necessary to provide the necessaries of life for himself and his wife.

Notwithstanding these facts shown by appellant, he was allowed by stipulation

---

[1] The parties agreed that appellant had paid $9,907.95 more than a correct computation justified, and judgment was rendered in his favor for that amount.

of the parties a net worth at the beginning of the tax period of substantially $99,000.00. With the evident purpose of hinting at the source of some of this money, appellant testified that in 1937 he began gambling operations on a small scale, which became larger.[2] The testimony reflects that appellant's gambling money was kept in his home, and these operations do not, in any event, begin to account for the large net worth allowed him at the beginning of the tax period. In addition, appellant made several inconsistent statements to the Revenue Agents concerning the amount of money he claimed to have brought from Vermont.[3] Moreover, his wife testified that when she visited the safety deposit box with appellant on December 17, 1941, she saw no money in the box.

It is apparent from the court's findings of fact that it concluded that appellant's testimony concerning the $70,050.00 was a complete fabrication.[4] It is apparent further that the court found that appellant's failure to return the money derived from gambling as taxable income and that his failure to file any tax returns at all for the years 1944 through 1950, though well knowing that he was receiving income in substantial amounts, construed in the light of its other findings, led to the conclusion that appellant's whole scheme of dealing with the government during the tax years was

---

2. The court's findings with respect to these operations are as follows:
   "10. Veino first engaged in gambling in 1937, in a small way, selling numbers on 'Cuba' to his sawmill employees as a convenience to them. He continued selling to his employees, friends, visitors and others through 1948. In 1945 he began taking small 'layoff' bets from other gamblers. In 1946 he began taking no-limit layoff bets from Clifford Proctor, a gambler from Winter Park, Florida. Proctor continued to place layoff bets with Veino until 1951. Raymond Witt, a gambler from Deland, Florida, placed layoff bets with Veino in 1949, 1950 and 1951. Veino was 'hit' for $18,000 in 1942, for $10,000 and $8,000 shortly thereafter, and in 1946 he was hit for $50,000. No records were kept of these gambling operations. The gambling proceeds and operating funds were kept in a secret drawer in Veino's desk at home, separate from all other funds. All of his 'hits' (losses) were eventually recouped."

3. The court's findings on this phase of the proof follow:
   "In a sworn statement made to Revenue Agent Willis and Special Agent Johnson on March 14, 1951 during their investigation of this matter, the plaintiff stated that he brought forty or fifty thousand dollars with him from Vermont in 1922 or 1923 when he came to Florida, and that he had close to $80,000.00 on hand as of March 14, 1951. On April 3, 1951 he stated that after a discussion with his wife he believed that he brought down seventy to seventy-five thousand dollars from Vermont in 1922, that it was carried in several paper sacks and hidden in his wife's clothing. On January 4, 1952, in a sworn statement made to Revenue Agent Willis and Special Agent Schiell, he stated that of the foregoing sum (seventy to seventy-five thousand dollars), by the year 1935, he had spent eighteen to twenty thousand dollars and had made an equal amount. Three months after this statement, on April 16, 1952, to the same agents, he stated that in 1930, in his safe at home, he had $100,000.00, consisting of the sum brought down from Vermont plus money he made in his Florida lumber business from 1923 to 1930, and that he kept it at home until 1937 when he placed it in his safety deposit box, and that this money was kept secretly, with the exception of his wife's knowledge of it. At the trial of the case he testified that he brought $70,000.00 with him from Vermont to Florida in 1921, that he placed $70,050.00 in the box when he opened it in 1937 and that substantially that sum remained in the box until 1951."

4. "12. The attitude and demeanor of plaintiff and his witnesses on the stand, the incredible and fantastic actions claimed to have been taken with regard to this cash, the vacillating explanations of its origin and amount, the secrecy surrounding the handling of it, the failure to keep or produce records applying to it, together with the record of this case as a whole preponderate clearly and convincingly in my now finding that there was little, if any, cash in the box on December 17, 1941. Consequently, the defendant was substantially correct in his computation of plaintiff's beginning net worth."

a deliberate fraud practiced with the view of evading the payment of taxes.

We are unable to say from a careful reading of the record that the court's findings and conclusions were clearly erroneous. Once the court had found that appellant had not told the truth about the $70,050.00, and that the circumstances established that it must have been accumulated during the tax period, the residue of its findings and its conclusions followed as a matter of course. The holding of the court below and our acceptance of it are based, as must be true in every case, upon the facts on which these conclusions are predicated.

Appellant makes an extended factual argument, without citing supporting authority, in which he seeks to demonstrate that all of the conclusions of the agents of the Internal Revenue Service were based upon speculation and fantasy.[5] The trouble with this argument is that the trier of the facts found the testimony of appellant, not the appellee, fantastically unreasonable. The appellee was not called upon to establish the correctness of his figures. A presumption of law did that and appellant carried the burden of demonstrating their unreasonableness.

The court below held that the appellant did not sustain this burden and we agree. He was wholly unable to show any source of income prior to the years for which these taxes were assessed which would account for the beginning net worth of substantially $99,000.00 which was agreed upon, plus the $70,-050.00 admittedly found in his safety deposit box. On the other hand, his gambling operations during the tax period furnished a reasonable explanation of the accumulation of these large amounts of cash.

In our opinion, the Commissioner was justified in allocating the accumulation of this $70,050.00 to the tax years under all of the facts before him, and the court below had facts and circumstances before it ample to justify his findings in support of the Commissioner's action. No serious argument is made that the Commissioner was not justified in dividing this cash into five parts to match the entries into the safety deposit box during that period, or that appellant has been prejudiced by such an allocation. The burden rested upon appellant of demonstrating that he was overtaxed and the amount by which he was overtaxed.[6]

Supplemental briefs were filed by the parties to discuss our case of Phillips v. Commissioner, 1957, 246 F.2d 209, which had not, prior to submission, come to the notice of either litigant. Appellant argues that that decision completely disposes of the finding of the court below that the $70,050.00 found in appellant's box after the end of the tax period was placed therein during the tax period. We do not think so. We think the second sentence of the Phillips decision furnishes the basis for distinguishing that case from this one (246 F.2d 210): "A corollary to this [question] is whether the presumptive correctness of the Commissioner's deficiency is enough without more to allow the Tax Court to take the admitted cash on hand at the end of the period * * * and dispense *with the necessity of having some proof* on any amount at the

---

5. The author of the brief does admit that appellant and his wife are a little peculiar: "Furthermore, we admit that Appellant and his wife are peculiar individuals. It will be seen from the schedule of net worth increases filed in evidence that the agents only charged the taxpayers with living expenses of $2,900 00 a year. Furthermore, for some unexplained reason, the taxpayers were content to permit the $70,050.00 to remain in a safety deposit box year after year,

until September 10, 1952, without drawing any interest. * * *"

6. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623; Akers v. Scofield, 5 Cir., 1948, 167 F.2d 718, 720, certiorari denied 335 U.S. 823, 69 S.Ct. 47, 93 L.Ed. 378. And cf. Cohan v. Commissioner, 2 Cir., 1930, 39 F.2d 540, 543–544, and Bodoglau v. Commissioner, 7 Cir., 1956, 230 F.2d 336, 340.

opening on the ground that the Taxpayer has failed to show that he did not have an equal amount on hand at the beginning dates of each year." (Emphasis added.)

Phillips had died before the trial, whereas appellant Veino gave testimony which, combined with other proof, convinced the Commissioner and the court below that the $70,050 was not in the possession of appellant at the beginning of the tax period, but was accumulated during that period. The proof which the court found lacking in Phillips is present here.

■ This basic finding concerning the money discovered in the safety deposit box in 1951 also disposes of the argument that the finding of fraud as the basis for the 50% penalty, under § 293(b) of the Internal Revenue Code of 1939,[7] was clearly erroneous. As shown above, there was much more present here than the mere failure to file tax returns. Appellant claimed to have brought more than $70,000.00 with him from Vermont, when his testimony showed that during his period there, he was barely able to eke out an existence. His tax returns for the intervening years prior to 1943 disclosed a net income insufficient to support his wife and himself.[8] At best, appellant's proof showed that he was systematically falsifying his tax returns for those years. Thereupon

being advised by long experience that he had to file income tax returns, he omitted filing any return for the tax years. Prior to 1943, moreover, he was keeping records of his legitimate business operations, but was not keeping records of his gambling operations. These facts, coupled with those discussed above, justified the finding of fraud by the court below and the infliction of the 50% penalty. Archer v. Commissioner, 5 Cir., 1955, 227 F.2d 270; Lee v. Commissioner, 5 Cir., 1955, 227 F.2d 181, certiorari denied 351 U.S. 982, 76 S.Ct. 1048, 100 L.Ed. 1497; Boyett v. Commissioner, 5 Cir., 1953, 204 F.2d 205.

Appellant, relying upon such cases as Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, and First Trust & Savings Bank of Davenport, Iowa v. United States, 8 Cir., 1953, 206 F.2d 97, argues that the court below erred in assessing both the 25% penalty under § 291(a) of the Internal Revenue Code of 1939,[9] and, in addition, the fraud penalty imposed by § 293(b) of the same Code. Since appellant has withdrawn his claim that the lesser penalty of § 291 should not have been visited upon him, this argument is really a rehash of the argument that the harsher penalties of § 293 should not have been inflicted against him at all. We readily agree with appellant's statement that "Congress intended some willful commission in addi-

---

7. "§ 293. Additions to the tax in case of deficiency.

"(b) Fraud. If any part of a deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3312(d) (2)." (26 U.S.C. 1952 ed., Sec. 293.)

8. It is admitted in the argument that doubtless appellant does owe considerably more tax for that period.

9. "§ 291. Failure to file return.

"(a) [as amended by Sec. 172(f) (4), Revenue Act of 1942, c. 619, 56 Stat. 798] In case of any failure to make and file return required by this chapter, within the time prescribed by law or pre-

scribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d) (1)."

tion to the willful omissions that make up the list of misdemeanors [willful failure to file return, etc.]," which language is taken from the Spies case [37 U.S. 492, 63 S.Ct. 368]. We have steadfastly adhered to that rule in our decisions.[10] But the court below found, and we think correctly, that the willful commissions adverted to in the Spies case were present here. We think, therefore, there is no merit in this contention.

The judgment of the District Court, is therefore,

Affirmed.

10. Eagle v. Commissioner, 1957, 242 F. 2d 635; Fairchild v. United States, 1957, 240 F.2d 944; Goldberg v. Commissioner, 1956, 239 F.2d 316; Boyett v. Commissioner, supra; and Mitchell v. Commissioner, 1941, 118 F.2d 308.