STEVEN D. BAGBY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 18538–90, 18796–90, 18865–90.

Filed April 12, 1994.

Steven D. Bagby, pro se.
*Martin L. Shindler* and *Brian J. Condon*, for respondent.

BEGHE, *Judge*: Respondent determined the following deficiencies in and additions to petitioner's Federal income tax:

*Additions to tax*

| Year | Deficiency | Sec. 6651(a) | Sec. 6653(a) | Sec. 6654(a) |
|------|-----------|--------------|--------------|--------------|
| 1985 | $17,085 | $2,375 | [1]$854 | $434 |
| 1986 | 23,748 | 4,353 | [1]1,187 | 765 |
| 1987 | 22,830 | 2,145 | [1]1,142 | 271 |

[1] Plus 50 percent of the interest payable on the underpayment.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In three separate statutory notices, respondent determined that petitioner failed to file tax returns for the years in issue and determined deficiencies and additions to tax in accordance with the tax tables for unmarried individuals. In his petitions,[1] petitioner alleged that he and his wife, whom he had married in 1985, had filed joint income tax returns for the years in issue. Respondent, by leave of this Court after trial, amended her answers to increase deficiencies and additions to tax in accordance with the tax tables for married individuals filing separate returns, and to allege that petitioner's underpayments were attributable to fraud.

---

[1] Upon respondent's motion, to which petitioner did not file an objection or response, the cases commenced by petitioner's three petitions were consolidated for purposes of trial, briefing, and opinion.

Respondent also filed a motion for sanctions under section 6673.

The issues for decision are: (1) Whether petitioner failed to file income tax returns for 1985, 1986, and 1987; (2) if petitioner failed to file returns, whether petitioner's underpayments were attributable to fraud or, in the alternative, to negligence; (3) whether petitioner substantiated deductions; (4) whether deficiencies and additions to tax should be determined in accordance with the tax tables for married individuals filing separate returns; (5) whether petitioner is liable for additions to tax for failure to pay estimated tax; and (6) whether petitioner is liable for a penalty under section 6673(a).

We find that petitioner fraudulently failed to file tax returns for 1985, 1986, and 1987, and is liable for fraud additions to tax under section 6653(b), that he substantiated some deductions, that deficiencies and additions to tax should be determined in accordance with the tax tables for married individuals filing separate returns, and that petitioner is liable under section 6654(a) for additions to tax for failure to pay estimated tax and for a $25,000 penalty under section 6673(a).

### FINDINGS OF FACT

The parties have stipulated some of the facts, and the stipulations of fact and attached exhibits are incorporated in this opinion.

During the years in issue, petitioner was a resident of New York, New York, with his wife, Kim L. Richardson. When petitioner filed his petitions, he was a resident of Paris, France, and he and Ms. Richardson were in the initial stage of a divorce proceeding. The trial in this case was held in New York, New York, on November 13, 1991, but the record was held open until November 4, 1992, to allow the parties to enter into supplemental stipulations of fact with respect to additional evidence.

Although petitioner timely filed a Federal income tax return for 1984 and automatic extensions to file (Form 4868) for 1986 and 1987, he never filed income tax returns for 1985, 1986, or 1987. Except for amounts withheld from

wages,[2] petitioner did not make any estimated tax payments for the years in issue. On February 10, 1992, Ms. Richardson filed "married filing separate" returns for the 3 years in issue.

## Petitioner's Pretrial Inaction

Petitioner failed to comply with this Court's standing pretrial order, which included warnings of possible sanctions for failure to comply; he failed to cooperate in the preparation of stipulations of fact; until the day before trial, he failed to stipulate facts or documentary evidence; and he failed to submit a trial memorandum to respondent's counsel and this Court. Petitioner failed to comply with our orders to file a response to respondent's motions to calendar and consolidate. Until 1 week before trial, petitioner failed to answer respondent's requests for admissions. Petitioner failed to answer most interrogatories, and until 2 days before trial, failed to produce documents (other than his purported copies of joint returns that he had allegedly filed), despite having been ordered to do so and having been warned of possible sanctions.

## Petitioner's Pretrial and Trial Misconduct

During August 1991, petitioner provided respondent with copies of Forms 1040 and supporting schedules that he had allegedly filed for 1985, 1986, and 1987. All three of these forms indicated that they were the joint returns of petitioner and Ms. Richardson, and all three forms included the combined wage income of petitioner and Ms. Richardson. However, Ms. Richardson only signed the 1987 return (and attached Form 4868). The signatures, purporting to be Ms. Richardson's signatures, on page 2 of petitioner's copies of the 1985 and 1986 joint returns were signed by petitioner without authority from Ms. Richardson.

On November 11, 1991, 2 days before trial, petitioner partially complied with this Court's order dated October 25, 1991 (extending the time for petitioner to comply with this Court's order dated September 30, 1991), by providing respondent with some of the documents that she had

---

[2] Petitioner's withholding was significantly less than his income tax for all 3 years in issue. Respondent has not introduced petitioner's Forms W-4 or alleged that petitioner filed false Forms W-4.

requested. Included in these documents were copies of what appeared to be two canceled checks that petitioner had photocopied. Petitioner represented to respondent, and subsequently testified to this Court, that these checks had been used to pay the tax due on his 1985 and 1986 tax returns and that these copies of those checks proved that he had filed those returns.

Petitioner's copies, purporting to be of the two canceled checks, were not true copies of the canceled checks. Petitioner altered the faces of checks 662 and 778 to correspond with the amounts shown as due on his copies of the purported 1985 and 1986 tax returns, and altered the back of check 2178, which he presented as the backs of checks 662 and 778, in an effort to mislead respondent and this Court.

*Petitioner's Post-Trial Inaction*

Although we granted petitioner's request at trial for additional time to reconstruct and substantiate deductions, he did not produce any further substantiation. Petitioner did not respond to respondent's proposed fourth stipulation of facts nor to our order to respond. None of the six post-trial documents that petitioner filed was timely received by this Court, although to complete the record, we granted leave for all six to be filed. Petitioner did not respond to respondent's proposed fifth stipulation of facts and did not timely respond to our order to respond. Petitioner did not file a timely reply to our order to reply to respondent's motion to amend her answers, and he did not file a timely objection to respondent's motion for damages. Despite our order to file any objections to respondent's post-trial application to depose Ms. Richardson and to file cross-questions to be asked at her deposition, petitioner did not file any objections or any cross-questions. Petitioner did not file his opening brief until more than 2 months after it was due, and he did not timely file his reply brief.

Petitioner's income and Federal income tax withheld were as follows:

|  | 1985 | 1986 | 1987 |
|---|---|---|---|
| Wages | $58,897 | $74,000 | $79,417 |
| Interest | 17 | 6 | 71 |
| Taxable refunds of State and local income taxes | 340 | -0- | -0- |
| Federal income tax withheld | 7,587 | 6,337 | 14,250 |

Petitioner substantiated itemized deductions as follows:

|  | 1985 | 1986 | 1987 |
|---|---|---|---|
| State and local income taxes | $4,268 | $4,570 | $8,073 |
| General sales tax (per tables) | 700 | 1,110 | -0- |
| Credit card and charge account interest | -0- | 255 | [1]157 |

[1] Before phase-in of the personal interest limitation.

Petitioner and Ms. Richardson never owned any shares allocated to cooperative apartment 1C at 135 West 79th Street in New York City.

## OPINION

Our findings of fact have been set forth as bare recitals of operative facts, without embellishment or explanation. Before setting forth our reasoning and applying the law to these facts, we provide a narrative of the events before, during, and after trial by which respondent and this Court came to understand the nature and extent of petitioner's misconduct. This preliminary excursus is appropriate because these events have a bearing on the amount of the penalty to be imposed.

### Petitioner's Misconduct Revealed

Petitioner engaged in the fraud of altering checks submitted to this Court as evidence, a fraud that was exposed by clear and convincing evidence at trial and subsequently proved beyond a reasonable doubt by additional evidence post-trial.

Our findings are based on true copies of the checks that petitioner represented to respondent, and subsequently testi-

fied to this Court, had been used to pay the tax due on his 1985 and 1986 tax returns. However, irregularities in petitioner's copies of the checks were evident even before true copies of the checks were provided by petitioner's bank (pursuant to respondent's subpoena duces tecum) after the trial.

Two days before trial, petitioner gave respondent copies of what appeared to be copies of canceled checks 662 and 778. Petitioner represented to respondent, and subsequently testified to this Court, that he had copied these checks when they were returned by his bank, and that he had used these checks to pay the tax due on his 1985 and 1986 tax returns. However, respondent saw that the bank-imprinted numbers in the lower right corner of the faces of those checks, which reflect the actual amounts of the checks presented to the bank and charged to the account, were different from the handwritten payment amounts. Respondent also saw that the document locator numbers (DLN's) imprinted on the copies, purporting to be the backs of checks number 662 and 778, were identical to each other, a virtual impossibility.

Because respondent received petitioner's copies of the checks only 2 days before trial (on Veterans' Day, a Federal bank holiday), respondent was not able to subpoena petitioner's bank for a bank representative to testify and provide copies of the original checks in time for trial. However, even without evidence from petitioner's bank, respondent provided clear and convincing evidence at trial that petitioner had altered his copies of the checks and had misrepresented to respondent and this Court that his copies were true reproductions of the checks.

At trial, respondent pointed out the discrepancies between the handwritten amounts and the bank-imprinted amounts on petitioner's copies, purporting to be the faces of checks 662 and 778. To describe the significance of those discrepancies, respondent offered testimony of her agent, Marilyn Picinich, and an excerpt from Frankel & Fink, How to Defend Yourself Against the IRS 27–29 (1985), describing how an alteration of a check can be detected if there is a discrepancy between the handwritten amount and the bank-imprinted amount.[3] From this evidence, it is clear that

---

[3] Although petitioner's alteration of the copies of the checks was a crude attempt to mislead

petitioner's copies, purporting to be the faces of checks 662 and 778, had been altered.

Respondent's agent also testified about DLN's and their significance. A DLN is a series of letters and numbers assigned to and imprinted on a return when it is received by an IRS service center. When a return is received with a payment, the same DLN is printed on the return and on the back of the check attached to that return. Each DLN indicates which service center processed the return and check, the type of tax, the type of return, the Julian date, the blocking series, the type of transaction (i.e., payment), the type of master file, the taxpayer's Social Security number, the tax period, and the transaction date. Every return has a different DLN.

The DLN's on petitioner's copies, purporting to be the backs of checks 662 and 778 (petitioner's DLN), were identical to each other. Petitioner's DLN indicated that the checks were processed with petitioner's 1989 tax return at the Philadelphia, Pennsylvania, Service Center on December 19, 1990. During the 2 days before trial, respondent's agents accessed respondent's master file computer data and found that a $520 payment was processed with petitioner's 1989 tax return by the Philadelphia, Pennsylvania, Service Center on December 19, 1990.

During the post-trial period for which the record was held open at the request of both parties, respondent provided corroborating evidence that checks 662 and 778 had been altered. After trial, respondent subpoenaed petitioner's bank for copies of checks number 662 and 778 and copies of all checks made payable to the Internal Revenue Service that had been cleared by, presented for payment to, or dishonored by the bank during the period December 1, 1990, through January 31, 1991.

Petitioner's bank provided respondent with the copies of the subpoenaed checks. Respondent found the check that had been processed with petitioner's 1989 return (check 2178)

that respondent detected and brought to the Court's attention, computer technology now makes every photocopy, photograph, and videotape potentially unreliable. Petitioner's misconduct provides a useful reminder of the need for careful authentication of photographs and other reproductions prior to their admission into evidence. Consult Humphreys, "Advent of Photo Manipulation Raises Legal and Ethical Questions", 211 N.Y.L.J., Mar. 1, 1994, at 5, and see *DiMichel v. South Buffalo Ry.*, 590 N.Y.S. 2d 1 (1992) (citing and quoting *Snead v. American Export-Isbrandtsen Lines*, 59 F.R.D. 148, 150 (E.D. Pa. 1973)).

and sent petitioner, who had returned to France, true copies of checks 662, 778, and 2178 as exhibits to respondent's proposed fourth supplemental stipulation of facts. Petitioner did not respond. Pursuant to Rule 91(f), respondent filed a motion to show cause why the facts and evidence set forth in her proposed fourth supplemental stipulation of facts should not be accepted as established. On April 7, 1992, we granted respondent's motion and ordered petitioner to file a response on or before May 13, 1992. Petitioner never filed a response, and on May 26, 1992, we ordered that the facts and evidence set forth in respondent's fourth supplemental stipulation of facts were deemed stipulated in accordance with Rule 91(f)(3).

The true copies of checks 662 and 778 show beyond a reasonable doubt that the faces of those checks had been altered. The true copy of the back of check 2178 shows beyond a reasonable doubt that it was the basis for the copies that petitioner represented were the backs of checks 662 and 778, and that it had been so altered as to make petitioner's copies, purporting to be the backs of checks 662 and 778, appear to be different from each other.

Petitioner's copy, purporting to be the face of check number 662, appeared to show that the check was dated February 16, 1986, and was signed by petitioner. It also appeared to show that the check was payable to the order of "IRS" for $12 (the same amount as shown as the "Amount You Owe" (line 68) on petitioner's copy of the 1985 joint return) and included a memo "526–98–9812", petitioner's Social Security number. Although check number 662 was dated February 16, 1986, and had been signed by petitioner, it was actually payable to "Cash" for $1,200 and did not include any memo.

Petitioner's copy, purporting to be the face of check number 778, appeared to show that the check was dated April 8, 1987, and was signed by petitioner. It also appeared to show that the check was payable to the order of "IRS" for $116.65 (the same amount as shown as "Amount You Owe" (line 67) on petitioner's copy of the 1986 joint return) and included a memo "526–98–9812". Although check number 778 had been signed by petitioner, it was actually dated May 20, 1987, payable to the order of "PTBA Garage" for $282.15, and did not include any memo.

The copies, purporting to be the backs of checks 662 and 778, showed identical endorsements and had identical DLN's. Petitioner's copies also appeared to show bank stamps indicating that check number 662 cleared petitioner's bank on December 30, 1986, and that check number 778 cleared on July 22, 1987. Petitioner's copies alleged to be the backs of checks 662 and 778 were copies of the back of check number 2178.

Check number 2178 was dated August 3, 1990, was payable to the order of "Internal Revenue Service" for $520, included a memo "526–98–9812", and was signed by petitioner. The back of check number 2178 had the same DLN and endorsement as the copies alleged to be the backs of checks 662 and 778. Check number 2178 was processed by the Philadelphia, Pennsylvania, Service Center, with petitioner's 1989 Form 1040, on December 19, 1990. It showed two bank stamps that do not appear on petitioner's copies, and it did not show the bank stamps appearing on petitioner's copies.

Petitioner testified that he personally copied checks 662 and 778 when they were returned by his bank and that he had kept those copies in his files with his copies of his returns. In his brief, petitioner admits that "the copies of canceled checks * * * are not valid copies of checks used to pay the taxes in question and therefore do not prove filing." However, petitioner fails to offer any explanation why he believed that his copies were copies of the actual checks used to pay the taxes due as shown on his copies of 1985 and 1986 Forms 1040 or how invalid copies of checks, the payment amount of which exactly matched the tax due on his copies, purporting to be the Forms 1040 that he and Ms. Richardson filed for 1985 and 1986, were put in his files. We can think of only one explanation: petitioner did not believe that his copies of checks 662 and 778 were copies of the actual checks because he had altered the copies to agree with his copies of 1985 and 1986 Forms 1040.

*Issue 1. Failure To File Returns*

On the day before trial, a thorough search by respondent of her master file computer data and Social Security data did not show any record that petitioner or Ms. Richardson had

filed Federal tax returns for 1985, 1986, or 1987. Although there is some possibility that respondent's records could be inaccurate for 1 year, "it is inconceivable that such records could be inaccurate for 3 consecutive years." *Grosshandler v. Commissioner*, 75 T.C. 1, 17–18 (1980); see also *Lucido v. Commissioner*, T.C. Memo. 1955–23.

At trial, petitioner's only proof that he had filed returns for the years in issue was his own testimony, purported copies of the joint returns that he alleged and testified he and his wife had filed, and purported copies of checks that he testified he had used to pay the taxes due shown on his copies of the 1985 and 1986 joint returns.

Because we have found that petitioner altered his copies of the checks and represented to respondent and this Court that his copies were true copies of the checks, we find his testimony and evidence of filing to be incredible and unworthy of belief.

Ms. Richardson testified[4] that the signatures on page 2 of petitioner's copies of the 1985 and 1986 joint returns, purporting to be her signatures, were not her signatures. We have independently compared those signatures with the signatures on the married filing separate returns that Ms. Richardson filed for 1985, 1986, and 1987, and we agree that the signatures on page 2 of petitioner's copies of the 1985 and 1986 joint returns were not her signatures. The handwriting of the signatures alleged by petitioner to be those of Ms. Richardson is petitioner's handwriting, as evidenced by his signatures on the purported returns and elsewhere in the record. See Fed. R. Evid. 901(b)(3); *Kang v. Commissioner*, T.C. Memo. 1993–601.

Respondent offered compelling evidence that petitioner did not file returns for any of the years in issue, and we find, by clear and convincing evidence, that he did not do so.

---

[4] Because petitioner resided in France and Ms. Richardson resided in New York, we found that there was good cause for her deposition to be taken on written questions. Rules 83 and 84(a). On Mar. 20, 1992, we ordered petitioner to file his objections, if any, to respondent's application for order to take deposition of Kim L. Richardson, and any cross-questions that he may have wanted asked at the deposition, pursuant to Rule 84(b). The written questions were served on petitioner and Ms. Richardson, but petitioner did not file any objections or cross-questions. On Apr. 21, 1992, we granted respondent's application, and on May 18, 1992, respondent took Ms. Richardson's deposition. On Sept. 2, 1992, upon consideration of respondent's motion to show cause why proposed facts in evidence (including the fifth stipulation of facts, to which the transcript of the deposition was an exhibit) should not be accepted as established and petitioner's response, we accepted into evidence the fifth supplemental stipulation of facts.

## Issue 2. Fraud

The Commissioner must prove fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); *Niedringhaus v. Commissioner*, 99 T.C. 202, 210 (1992). To prove that a taxpayer is liable for an addition to tax for fraud, the Commissioner must establish (1) an underpayment of tax for each year in issue and (2) a specific intent to evade a tax believed to be owed for each year in issue. *Grosshandler v. Commissioner, supra* at 19; *Otsuki v. Commissioner*, 53 T.C. 96, 105 (1969).

## Issue 2(a). Fraud—Underpayment

An "underpayment" for purposes of section 6653 is equal to a "deficiency" as defined by section 6211 (with an exception for returns filed after their due date). Sec. 6653(c). For a year that a taxpayer does not file an income tax return, the deficiency is equal to the total income tax imposed for that year, without regard for any income tax withheld from wages. Sec. 6211(b)(1); *Cirillo v. Commissioner*, 314 F.2d 478, 484 (3d Cir. 1963), affg. on this issue T.C. Memo. 1961–192. As a result, an underpayment for a year that a taxpayer does not file a return is equal to the full amount of tax imposed. *Sullivan v. Commissioner*, T.C. Memo. 1991–492, affd. on this issue 985 F.2d 704, 706 (2d Cir. 1993); sec. 301.6653–1(c)(1)(ii), Proced. & Admin. Regs. If the Commissioner proves that the taxpayer has failed to file returns, the Commissioner has effectively proven an underpayment. *Grosshandler v. Commissioner, supra* at 19.

In this case, we find, by clear and convincing evidence, that petitioner did not file returns for any of the years in issue and that he had an underpayment of tax for each of those years.

## Issue 2(b). Fraud—Intent

Although a taxpayer's failure to file a return is prima facie evidence of negligence, *Emmons v. Commissioner*, 92 T.C. 342, 350 (1989), affd. 898 F.2d 50 (5th Cir. 1990), it is insufficient, without more, to prove fraud, *Rowlee v. Commissioner*, 80 T.C. 1111, 1123 (1983). Even when a taxpayer knows that tax is due, the mere failure to file a return ordinarily does not justify a finding that the taxpayer intended

to evade tax. *Zell v. Commissioner,* 763 F.2d 1139, 1146 (10th Cir. 1985), affg. T.C. Memo. 1984–152. When a taxpayer fails to file a return, the Commissioner must produce, at a minimum, some convincing affirmative indication of the taxpayer's intent to evade tax. *Stoltzfus v. United States,* 398 F.2d 1002, 1004 (3d Cir. 1968); *Grosshandler v. Commissioner, supra* at 19; see *Hudgens v. Commissioner,* T.C. Memo. 1985–587 (comparing the "affirmative action" test of the Courts of Appeals for the Fifth, Eighth, and Tenth Circuits with the "affirmative indication" test of the Court of Appeals for the Third Circuit).

When a taxpayer has filed a fraudulent return, fraud is committed when that return is filed. *Badaracco v. Commissioner,* 464 U.S. 386, 394 (1984). When a taxpayer fails to file a return, fraud might not occur until the taxpayer takes some action with the intent of evading tax believed to be due. *Veino v. Fahs,* 257 F.2d 364, 366 (5th Cir. 1958) (lying to the Commissioner's agents and the court); *Kotmair v. Commissioner,* 86 T.C. 1253, 1259–1260 (1986) (concealing information from examining agents); *Stephenson v. Commissioner,* 79 T.C. 995, 1007 (1982) (submitting false evidence), affd. 748 F.2d 331 (6th Cir. 1984); *Dudley v. Commissioner,* T.C. Memo. 1982–462 (false representations to the Commissioner's agent); *Afshar v. Commissioner,* T.C. Memo. 1981–241 (evasive, uncooperative, and dilatory conduct during the Commissioner's investigation), affd. without published opinion 692 F.2d 751 (4th Cir. 1982). Just as a taxpayer commits fraud when he files a fraudulent return in a purported attempt to cure what was a nonfraudulent failure to file, he also commits fraud when, as in this case, he takes fraudulent actions to evade tax while he continues not to file.

Some of the affirmative indications and conduct that will support a finding of fraud when a return has not been filed include: (1) Falsifying or altering documents, *Spies v. United States,* 317 U.S. 492, 499 (1943); *Stephenson v. Commissioner, supra*; (2) employing evasive tactics or withholding information when asked for information, *Kotmair v. Commissioner, supra* at 1260–1262; *Afshar v. Commissioner, supra*; (3) knowing that returns are due and taxes are owed, *Solomon v. Commissioner,* 732 F.2d 1459, 1461–1462 (6th Cir. 1984), affg. T.C. Memo. 1982–603; *Stoltzfus v. United States, supra* at 1004; (4) lying to respondent's agents and the court,

*Veino v. Fahs, supra* at 366; *Dudley v. Commissioner, supra*; and (5) engaging in "any conduct, the likely effect of which would be to mislead or to conceal", *Spies v. United States, supra* at 499. When a taxpayer's course of conduct establishes an intent to evade taxes, fraud may be inferred from that course of conduct. *Kotmair v. Commissioner, supra* at 1260; *Stone v. Commissioner,* 56 T.C. 213, 224 (1971).

Petitioner knew that he was obligated to file tax returns and pay tax for the years in issue. He had timely filed a return for 1984, and he timely filed automatic extensions for 1986 and 1987. See *Solomon v. Commissioner, supra* at 1461–1462; *Stoltzfus v. United States, supra* at 1004.

Until a week before trial, petitioner failed to cooperate with respondent's requests for admissions, for answers to interrogatories, or for production of documents, despite this Court's orders to do so. However, petitioner's inaction before trial seemed to be as consistent with negligent disregard as with fraudulent evasion. However, once petitioner acted, his willful misconduct of falsifying documents and deliberately misrepresenting material facts clearly manifested an intent to evade tax and delay these proceedings.

Two days before trial, petitioner provided respondent with purported copies of canceled checks 662 and 778. Petitioner testified that he had personally photocopied the two canceled checks and had put the copies in his tax files. He asserted that, because his copies of the checks were made payable to "IRS" in the same amounts shown to be due on the returns that he allegedly filed for those years, the copies proved that he had filed his 1985 and 1986 tax returns and paid his taxes. Contrary to petitioner's assertion, the copies that he proffered to respondent and this Court did not show that he had filed returns and paid taxes. Instead, they showed that he had altered documents and had lied to respondent and this Court.

In an effort to mislead respondent and this Court and to evade tax, petitioner altered copies of the faces of checks 662 and 778 and copies of the back of check number 2178, and misrepresented that these altered copies were true and accurate copies of checks 662 and 778. Alteration of documents is a "clear badge of fraud". *Powell v. Granquist,* 252 F.2d 56, 59 (9th Cir. 1958).

Petitioner knew of his obligation to file returns and pay taxes, but he failed to file returns or pay the taxes due for the years in issue. After petitioner filed his petitions, he failed to cooperate with respondent's agents, created and produced falsified and altered documents, and lied to respondent's agents and this Court. Petitioner's misconduct clearly manifests his intent to evade tax.

Although the falsified and altered documents were directly related only to 1985 and 1986, petitioner used them indirectly to support his false allegation that he filed his 1987 return. The cases arising from the three petitions were consolidated without any objection from petitioner. On the record that we gave petitioner the opportunity to make, we find that petitioner's entire course of conduct (and misconduct) during these proceedings was intended to mislead respondent and this Court and to conceal petitioner's failure to file returns and underpayment of taxes for all the years in issue. *Spies v. United States, supra* at 499; *Kotmair v. Commissioner, supra* at 1260; *Stone v. Commissioner, supra* at 224.

For all the years in issue, respondent has proven fraud by clear and convincing evidence.

*Issue 3: Expense Substantiation*

As substantiation of itemized deductions, petitioner offered Forms W–2, copies of credit card statements, a copy of a "Contract of Sale—Cooperative Apartment" for the purchase of shares to a cooperative apartment (purchase contract), and his own testimony. At trial, petitioner requested additional time to reconstruct his substantiation of deductions, and we granted his request. Petitioner did not provide any additional substantiation.

During the 2 days prior to trial, respondent's Agent Stamm reviewed petitioner's copies of Forms 1040 for 1985, 1986, and 1987 under the assumption that they were properly filed returns but that the filing status should have been married filing separately. Agent Stamm made adjustments to petitioner's taxable income as shown on petitioner's copies of Forms 1040 and recorded those adjustments on Form 4549 (pro forma RAR).

On the pro forma RAR, Agent Stamm allowed deductions for State and local income taxes shown on petitioner's Forms W–2, for general sales taxes (per sales tax tables), and for the portion of credit card interest substantiated by credit card statements that identified petitioner as the debtor.[5] Agent Stamm disallowed deductions for charitable contributions, miscellaneous itemized deductions, and employee business expenses, which petitioner attempted to substantiate only by his testimony, and disallowed deductions for real estate taxes and home mortgage interest, which petitioner tried to substantiate by his testimony and a copy of the purchase contract. Agent Stamm disallowed deductions for credit card interest supported by credit card statements that identified Ms. Richardson as the debtor or credit card statements that did not identify the debtor (unidentified credit card statements).

We find that the pro forma RAR is accurate and allow petitioner deductions for State and local income taxes shown on his Forms W–2, for general sales taxes, and for the portion of credit card interest substantiated by credit card statements that identified petitioner as the debtor.

Petitioner's testimony regarding further deductions is incredible, and we have given it no weight. We have therefore found that petitioner is not entitled to deductions for contributions, for miscellaneous itemized deductions, or for employee business expenses.

Petitioner did not acquire ownership of shares allocated to cooperative apartment 1C at 135 West 79th Street in New York City. Petitioner's copy of the purchase contract purports to show that the contract was signed by the would-be seller, by Ms. Richardson, and by petitioner, but the contract never became binding, and the purchase was never consummated by petitioner and Ms. Richardson. Ms. Richardson's purported signature on petitioner's proferred copy of the purchase contract was in the same handwriting as her alleged signatures on the 1985 and 1986 joint returns, which we have found to have been forged by petitioner, and the

---

[5] Although respondent did not allow any deductions when she filed amendments to her answer, we do not think that she seriously contends that petitioner has not substantiated these deductions. Respondent seems to have conceded them at trial and did not dispute them in her brief.

attached "Rider to Contract of Sale of Co-op Apartment" was not signed.

Ms. Richardson testified that she and petitioner never purchased the apartment shown on the purchase contract. Ms. Richardson described how the purchase contract had been offered to her and petitioner by the would-be seller, discussions with an attorney about the contract, and why she and petitioner did not purchase the apartment.[6] We have found Ms. Richardson's testimony on this point to be plausible and persuasive. Because the evidence shows that petitioner did not own the cooperative apartment, we find that he is not entitled to deductions for real estate taxes or home mortgage interest.

Although we gave petitioner additional time to provide evidence that the unidentified credit card statements were his, he did not do so. We find that he is not entitled to deductions for interest expense shown on the unidentified credit card statements or on Ms. Richardson's credit card statements.

## Issue 4. Married Filing Separate Returns

Respondent determined petitioner's deficiencies according to the tables for "unmarried individuals" provided in section 1(c). However, after discovering that petitioner was married at the end of each year in issue, respondent amended her answer and asserted that petitioner's deficiencies should have been determined according to the tables for "married individuals filing separate returns" provided in section 1(d). This change of filing status increases the deficiencies and the additions to tax. With respect to these increases in deficiencies and additions, the burden of proof is on respondent. Rule 142(a).

Respondent must prove that petitioner was married at the end of each year in issue and did not file a joint return with his spouse for each year in issue. Sec. 1(d). Petitioner admitted that he was married at the end of each year in issue, and respondent proved that, as of the date of trial, petitioner had not filed income tax returns for the years in issue.

Although petitioner and his wife could have filed joint returns at any time before this case was submitted for deci-

---

[6] "[I]t wasn't a good deal and the landlord was probably not legally capable of selling [the] property".

sion, *Phillips v. Commissioner*, 86 T.C. 433 (1986), affd. on this issue 851 F.2d 1492 (D.C. Cir. 1988), petitioner did not offer any credible evidence that he and Ms. Richardson had ever filed joint returns. Instead, on February 10, 1992, Ms. Richardson filed "married filing separate" returns for the years in issue, precluding petitioner from filing joint returns for those years. Sec. 6013(b)(2)(C).

Respondent has met her burden of proof, and we uphold the increases in deficiencies and additions to tax resulting from the change of filing status.

## Issue 5. Failure To Pay Estimated Tax

Section 6654(a) imposes an addition to tax when a taxpayer fails to make estimated tax payments or satisfy any of the exceptions provided under section 6654(e). This addition to tax is imposed regardless of reasonable cause or extenuating circumstances. *Dodge v. Commissioner*, 96 T.C. 172, 183 (1991), affd. on this issue 981 F.2d 350 (8th Cir. 1992); *Grosshandler v. Commissioner*, 75 T.C. at 21. The addition is equal to the interest rate established by section 6621[7] applied to the amount of the underpayment for the period of the underpayment. Sec. 6654(a). Unlike an "underpayment" under section 6653(b), an underpayment under this section is reduced by income taxes withheld from wages. Sec. 6654(b), (g).

Petitioner did not show that any of the exceptions apply, so he is properly liable for this addition to tax for the years in issue. In computing the additions for failure to pay estimated income tax, petitioner is entitled to credit for deemed payments of Federal income tax withheld from his wages.

## Issue 6. Sanctions

Respondent filed a motion for sanctions (which she characterized as "damages") under section 6673. It is clear, however, that we need not find specific damages to impose a penalty under section 6673(a)(1). *Rollercade, Inc. v. Commissioner*, 97 T.C. 113, 118 (1991); H. Rept. 101–247, at 1399 (1989). Even before section 6673(a)(1) was clarified by the Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. 101–239, sec. 7731(a), 103 Stat. 2400, it was viewed as a

---

[7] The underpayment rate for 1985 and the applicable annual rate for 1986 and 1987.

penalty provision, intended to deter and penalize frivolous claims and positions in deficiency proceedings. *Sauers v. Commissioner*, 771 F.2d 64, 67 (3d Cir. 1985), affg. T.C. Memo. 1984–367; H. Rept. 101–247, *supra* at 1399.

In addition to clarifying that payments required under section 6673(a)(1) are penalties, OBRA increased the maximum penalty from $5,000 to $25,000. OBRA sec. 7731(a), 103 Stat. 2400. This increase was intended to apply primarily to tax shelter cases, but section 6673(a)(1) continues to apply, as it has in the past, to all situations in which its use is appropriate, H. Rept. 101–247, *supra* at 1399–1400, and we have imposed penalties in excess of $5,000 on petitioners in cases not involving tax shelters, *Bierhaalder v. Commissioner*, T.C. Memo. 1993–164 ($20,000), affd. without published opinion 16 F.3d 415 (10th Cir. 1994); *Kingman v. Commissioner*, T.C. Memo. 1992–281 ($10,000); *Steines v. Commissioner*, T.C. Memo. 1992–20 ($15,000), affd. 12 F.3d 1101 (7th Cir. 1993); *Schramm v. Commissioner*, T.C. Memo. 1991–523, affd. without published opinion 988 F.2d 121 (9th Cir. 1993) ($10,000); *Singer v. Commissioner*, T.C. Memo. 1990–222 ($25,000), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991).

For positions taken in proceedings commenced after December 31, 1989, this Court is authorized to impose a penalty against a taxpayer whenever it appears that: (1) The taxpayer instituted proceedings primarily for delay; (2) the taxpayer's position was frivolous or groundless; or (3) the taxpayer unreasonably failed to pursue available administrative remedies. Sec. 6673(a)(1); *Rollercade, Inc. v. Commissioner, supra* at 117.

Proceedings may be treated as instituted primarily for delay when a taxpayer does not provide the Commissioner with information or offer evidence at trial. *Stamos v. Commissioner*, 95 T.C. 624, 638 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992). A position is groundless if the taxpayers know "very well in advance of trial that there was no basis in law or fact for the deductions they claimed." *Horn v. Commissioner*, 90 T.C. 908, 946 (1988). Unreasonable failure to pursue available administrative remedies includes unreasonable failures to respond to the Commissioner's requests to substantiate deductions. *Rollercade, Inc. v. Commissioner, supra* at 118; *Birth v. Commissioner*, 92 T.C. 769, 774 (1989).

After filing his petitions, petitioner's inaction and misconduct indicated that he had initiated these proceedings primarily for delay. Petitioner did not cooperate with respondent's informal requests for information, and, until shortly before trial, he did not respond to respondent's formal requests for information. Petitioner ignored or responded late to this Court's orders to respond to respondent's motions, to answer interrogatories, to produce documents, and to file a pretrial brief. Although petitioner appeared and participated at trial, he resumed his dilatory course of inaction after trial. He continuously and consistently ignored or responded late to respondent's communications and this Court's orders.

Petitioner claimed that delivery of documents was delayed for various reasons attributable to his foreign residence. In light of petitioner's misrepresentations, we find that petitioner's inaction, before trial and after trial, was intended primarily for delay and that any delivery problems were of his own making.[8]

A taxpayer's position is clearly groundless when the only evidence he supports it with is evidence that he knows to be false. Although the penalty provision of section 6673(a)(1) has generally been used to sanction flagrant tax protesters and abusive tax shelters, it is also a proper channel for this Court to sanction and deter the use of false documents and testimony and to protect the integrity of our proceedings from intentional misconduct. See *Ash v. Commissioner*, 96 T.C. 459, 472–473 (1991) (noting this Court's power to impose sanctions when the underlying facts and circumstances establish an abuse of the Court's processes). Petitioner's introduction of evidence, known by him to be false, persuades us that his position, supported primarily by that evidence, was groundless within the meaning of section 6673(a)(1).

Petitioner relied primarily on purported copies of checks that he had altered and copies of returns on which he forged Ms. Richardson's signature. Petitioner knew that his reliance on these purported copies had no basis in fact. We find that

---

[8] Petitioner blamed the French Postal Service for various failures to receive mail from the Court and respondent. We note, however, that the registered mail that was returned as "non réclamé, retour à l'envoyeur" (not claimed, return to sender) was properly addressed (per petitioner's last instructions) and, in one instance, was forwarded by the French Postal Service to an address that petitioner subsequently provided to this Court.

petitioner's reliance on fraudulently altered copies of checks and returns bearing false signatures was groundless and was intended primarily for delay.

Because we find that petitioner instituted these proceedings primarily for delay and that his position was groundless, we grant respondent's motion for sanctions under section 6673(a)(1). Because petitioner's misconduct has been so egregious, we require petitioner to pay the maximum penalty permitted by section 6673(a)(1), $25,000.

To reflect the foregoing,

*An appropriate order will be issued and decisions will be entered under Rule 155.*